## No. 10,653.

### SUCCESSION OF MARTIN S. COSTE.

1. The wife must show affirmatively that the property claimed is hers, and not that of the community.

   In the absence of proof of a manual gift, a donation will not be valid unless an act be passed before a notary and two witnesses.

   There was no manual delivery made, nor any authentic deed passed; the heirs can not recover the property claimed as a donation.

2. The mother has preference in a contest for administration with the wife.

3. The legatee under particular title owes the mortgage bearing on the property donated, and a proportion of the debts and charges when the deceased disposed of all his property by separate, particular legacies.

   When the bequests exceed the disposable portion, they must be reduced *pro rata.*

4. The executor of a solvent succession will not be held responsible for not having instituted an action in revendication of real property.

5. A concubine suing to recover payment upon a note of a party deceased must prove that she gave legal consideration.

6. The endorsee takes only such title as the endorser had.

7. An application for a new trial will be refused when the applicant could, with due diligence, have obtained the newly discovered evidence for the trial.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor, J.*

*Chas. F. Claiborne* for the Executrix, Appellee:

All property acquired during marriage in the name of either husband or wife is presumed community.

Succession of Coste.

The general rule is that all donations *inter vivos* must be evidenced by an authentic act.

The disposable portion is calculated upon the value of all property left by the deceased, and of all property donated by him *inter vivos*.

The heir is preferred to the wife in a contest for administration.

When the bequests exceed the disposable portion, they must be reduced *pro rata*.

The particular legatee takes the legacy subject to all incumbrances placed upon it by the donor.

The executor of a solvent succession has no right to institute an action of revendication of real property.

A concubine suing upon a note of the deceased must prove that she gave a legal consideration.

One who takes a note after maturity, takes it subject to all equities.

An application for a trial upon the ground of newly discovered evidence will be refused when the applicant could, with due diligence, have obtained it before.

An opposition to an account filed by an administrator is an answer. Succession of Planchet, 29 An. 520 (521); 29 An. 712; 28 An. 607; 30 An. 270.

No replication to nor rejoinder of issue is required or allowed under our practice with an opponent who demands to be placed upon an account filed by an administrator who refuses to recognize opponent's claim. Succession of Pasquier, 12 An. 758; Succession of Overby, 28 An. 820 (821); Succession of Gayle, 27 An. 547 (548–552).

---

## *Ambrose Smith* for the Heirs, Appellants:

The endorsee of a promissory note after maturity takes the instrument at his own risk, subject to all defences, demands and equities that could be urged if suit were brought by the endorser. 9 R. 265; 23 An. 313; 31 An. 229; 4 McLean 428; 4 Cush. 456; Hawthorne on Neg. Inst., pp. 61-2.

In an action on promissory note, where plea of want of consideration is sustained by evidence throwing serious doubt upon it, the burden of proof is on the party suing. This is particularly so of a concubine declaring on the note of deceased. 9 An. 234; 14 An. 122; 41 An. 297.

The note herein sued on by the concubine of deceased can not be treated as a donation *inter vivos*. A donation of a promissory note must be made by authentic act. C. C. 1481, 1491, 1536; 22 An. 97.

The donation of corporeal, movable things, such as household furniture and effects, accompanied by real delivery, is not subject to any formality—notarial act thereof is not requisite. C. C. 1539.

The estimated value of property donated *inter vivos* is to be fictitiously added to the other assets of the succession for the *sole* purpose of determining the disposable *quantum*, and the reduction, if any, to which donations, either *inter vivos* or *mortis causa*, are liable. C. C. 1505.

Donations *inter vivos* can never be reduced until the value of all the property comprised in donations *mortis causa* be exhausted. C. C. 1507.

In a testamentary succession the legal heirs of deceased can have no right or interest until and unless the particular legatees have been fully paid and satisfied. C. C. 1634; 2 R. 382; 17 L. 312; 1 Woods 144; C. C. 1704, 1709, 1465.

10

Where the assets of such a succession are sold to pay debts and the *legitime* of the forced heir, the particular legatees must suffer a proportionate reduction to meet said charges; and the residue must be divided proportionately between the particular legatees.  C. C. 1430, 1431.  The legal heirs, as such, get nothing.
Particular legatees are never liable to contribute to the payment of debts or to satisfy the legitimate portion of the forced heir when there are other assets out of which said charges can be satisfied.  There can be no residuum for residuary legatees or legal heirs until the particular legacies-are fully acquitted.  1642, 1634.

*W. S. Benedict* on the same side.

*Merrick & Merrick* for Opponents and Appellants:

1.  The evidence does not show any indebtedness on the part of Read to Coste.
2.  The evidence shows that Coste owed Read at the time of the pledge.  Rec. 111.
3.  The pledge was valid and complete as to the whole world at its date.  C. C. 3158.
4.  Partnership accounts can not be pleaded as an offset to a note.  7 N. S. 516; Coste vs. Borden, 2 Rob. 216; Janau vs. Ferrand, 7 L. 564; Fagot vs. Poché, 9 R. 436; Powell vs. Graves.

*Chrétien & Suthon* for Opponent and Appellant:

1.  The relation of concubinage is not inconsistent with the honest relation of debtor and creditor.
2.  The execution of a note raises a presumption that a just consideration has been given for it.  8 M. 161; 4 R. 192; 6 An. 757; 14 An. 860.
3.  The burden is upon the administrator to show the correctness of his account.  30 An. 270.
4.  Pleas of payment and compensation admit the consideration of the note.  35 An. 1036.
5.  A claim for real estate can not be compensated against sums due on notes.  2 R. 546.
6.  Defendant must prove his pleas of want of consideration.  20 An. 209.
7.  When evidence of want of consideration is conflicting, the presumption is in favor of a valid consideration.  28 An. 94.

*W. B. Sommerville*, Assistant City Attorney, and *Carlton Hunt*, City Attorney, for the City of New Orleans, Opponent and Appellee.

The opinion of the court was delivered by
BREAUX, J.    Martin J. Coste died May 18, 1888.
He disposed of all his property by last will and testament under particular title.

His mother survived him and one brother and two sisters, but no legitimate children.

His widow died October 15, 1888, leaving as her legal heirs three brothers.

The estate owed largely, which made it necessary to sell all the property bequeathed.

The mother qualified as executrix.

In the account of the executrix it appears that the assets of the succession amounted to the sum of $30,416.64; the debts to the sum of $21,927.66, in which is included the mother's legitime, amounting to $4244.48; leaving a balance of $8488.98.

He bequeathed to his wife property the sale of which amounted to $15,826.55, and to her brother property also sold at succession sale, which amounted to $2600.

Opposition to the distribution of the funds, as proposed by the executrix, is made by the brothers of the late Mrs. M. J. Coste, claiming as heirs of their sister.

Other oppositions have been filed.

The court a qua dismissed all the oppositions except one—that relating to taxes.

The opponents have appealed.

I.

The heirs of Mrs. Coste oppose the item of " household furniture " valued at $898 carried in the inventory and in the account, as part of the assets, and allege that the furniture formed no part of the assets of the succession and was the separate property of their deceased sister, having been donated to her by her late husband.

One of the opponents testifies as a witness that this furniture was. always considered as separate property.

The husband and wife lived in the dwelling where the furniture was.

Bills were produced for the furniture, made out in the name of the wife.

The notary testifies that, at the time he took the inventory, the brother of the deceased notified him that all the contents of the house belonged to the wife, they having been donated to her by her husband.

The title of the wife is not satisfactorily proven.

The bills show that this furniture was purchased after the marriage.

Property purchased during marriage belongs to the community, unless it is distinctly shown that it was purchased with the separate money of the spouse, who claims ownership and for his or her own use.    R. C. C. 2402; 33 An. 767; 33 An. 609; 34 An. 975; 38 An. 147; 41 An. 244.

The wife must show affirmatively that the property is hers.

The bills were made in her name, but the record does not disclose that the payments were made from her separate funds.

There was no formal donation made, either by authentic act or manual delivery.

The husband insured the property in his own name.

That would not conclude the wife if it had been her property, but, considered in connection with the unsatisfactory testimony admitted to prove her title, it adds to the uncertainty of the claim.

It was presumably community property.

A donation is never presumed.

The evidence does not rebut these presumptions.

The title claimed after all has no significance.

To determine the reductions to be made, the donations *inter vivos* must be added to an aggregate formed of all the property belonging to the testator at the time of his decease, according to its value.

The sums due by the estate are deducted from this aggregate amount, and the disposable amount is calclulated in the balance. C. C. 1505.

The value of this furniture was added to the assets.

The executrix made the addition of this donation *inter vivos* as required by the quoted article.

## II.

Next in the order of opposition made is that by the heirs of the late Mrs. M. S. Coste. They oppose the commission of the executrix on the ground that she verbally agreed and contracted, for and in consideration of her being permitted, through her counsel, to manage and control the estate of M. S. Coste, that she would not charge the legal fee allowed by law to an executrix, and waived all her rights to commission for services.

Only one witness, one of the opponents, testifies to this agreement.

The executrix positively denies that she ever made any such agreement. Two other witnesses testify to facts corroborating the testimony of the executrix and assert contradictorily to that testified to by the opponent as a witness.

The preponderance of the testimony precludes the possibility of reaching the conclusion that such an agreement as alleged was made.

The executrix is therefore entitled to the commission charged.

In addition, the opponent, testifying in his own behalf, assumed that the widow of the decedent had the preference to the appointment of testamentary executrix.

She had never applied for the appointment.

Acting upon the supposed right of the widow to be appointed, he testifies that he called upon the mother of the decedent and made the agreement, that is "withdrew the application made on behalf of the widow and allowed the one in favor of the mother to prevail."

There was error on the part of the witness: the mother had preference. If an agreement had been proven, it would be without consideration or motive and would fall under the grasp of Articles 1893 and 1896 of the Civil Code.

### III.

The next ground of opposition is not argued by the opponent.

The proposition is possibly included in grounds subsequently alleged; we therefore pass it without further notice.

### IV.

The costs charged to the special legacies are opposed as being improperly charged to them. With reference to these costs the facts are that the succession being largely involved, it was necessary to sell the property to satisfy the debts.

The heirs and legatees consented.

The property was mortgaged, and from the proceeds of the respective properties an amount was deducted to pay the mortgage bearing upon the property.

The legatee under particular title owed the mortgage bearing upon the property donated. C. C. 1638, 1636, 1441, 1577, 1442.

The assets of the succession undisposed of by legacy were not sufficient to pay the costs and the legitime; it is therefore necessary

to charge to the accepted legacies the debts and charges remaining unsatisfied, after deducting therefrom the amount of the renounced legacy which reverted to the succession.

With reference to the distribution of the residuum and the opposition of the heirs of M. S. Coste, we hold: The deceased disposed of his property by particular legacies.

It was not made conjointly, nor is there any residuary legatee named in the will.

Accretion therefore could not take place.

In her account of distribution the executrix credits the special legatee, Mrs. M. S. Coste (now her heirs), and John Coste with the proceeds of the sale of property; also similar credit is given to J. A. DeBlanc, the other particular legatee. She charges them with their proportion of the mortgage debts and their proportion of the general charges and debts.

The difference is carried as a net credit in satisfaction of their legacies.

J. A. DeBlanc having renounced, the legacy lapsed so far as he is concerned.

The executrix places the amount he would have received, had he not renounced, to the credit of the legitimate heirs of M. S. Coste.

These particular legatees, heirs of Widow Coste, who have accepted, interpose the objection that there is error in proposing to distribute $2513 in equal proportion in favor of the brother and two sisters, as legal heirs of the deceased M. S. Coste.

That the succession is testamentary, and the legal heirs of the deceased can have no right or interest until the particular legatees have been fully paid and satisfied.

That by Article 1634 " particular legacies must be discharged in preference to all others, even though they exhaust the whole succession, or all that remains after the payment of the debts and the contributions for the legitimate portion, in case there are forced heirs."

That the renounced legacy can not benefit the legal heirs of the deceased, for the residuum fund, after the debts and the legitimate portion of the forced heirs were paid, did not suffice to discharge the particular legacies which have been accepted.

That, if it be determined under Article 1709 C. C. that by the renunciation the interest in the legacy reverted to the succession, as

if the legacy had never been made, and thereby devolved upon the legal heirs, it must still be decided that the right of the heirs is only eventual, and that the debts must be paid before they can receive any part of the succession.

After an examination of the different grounds, we conclude that Article 1709 of the C. C. relates to successions remaining undisposed of.

The letter of the article shows that the renounced legacy reverts to the succession, as if it never had been made.

It provides that succession *undisposed of*, because the heir has not been *willing to accept* it, shall devolve upon the legitimate heirs.

We might rest our decision upon the authority of this article. Having found a number of uniform decisions upon that subject, we quote from them. With reference to lapsed legacies in the case of Prevost vs. Martel, 10 R. 519, it is decided:

If there is not a universal legacy, it is evident that the caducity reverts to the profit of the heirs *ab intestato*.

In case of their failure or reduction the universal legatee has a right to consider them as a part of the inheritance; not a legacy.

"Every portion of the succession remaining undisposed of, either because the testator has not bequeathed it, either to a legatee or to an instituted heir, or because the heir or legatee has not been able or has not been willing to accept it, shall devolve upon the legitimate heirs." Lebeau vs. Trudeau, 10 An. 165.

Property not bequeathed and property bequeathed, but not accepted, are mentioned as subject to the same rule and is similarly disposed of, by decreeing that it is inherited by the legitimate heir.

In a more recent case it was held that the lapsed legacy reverted to the succession and became subject to the widow's legal usufruct.

If the legacy, after it has been renounced, remained intact and devolved to the legal heirs, as a legacy, it could not have been decided that it reverted to the succession and became subject as part of the succession assets to the legal usufruct of the wife.

"We conclude that the third part of the estate bequeathed to the mother did not pass by the will, (the legacy having lapsed,) and that therefore by virtue of Article 1709, Civil Code, it devolved at the death upon his legitimate heirs. (The words in parenthesis are ours.) Hence, also the widow's legal usufruct attached at same

date, and is therefore chargeable with the revenues." Succession of Dougart, 30 An. 274.

The French commentators maintain the same principle.

"Le legs nul, révoqué ou caduque, est reputé non écrit, *pro non scripto habetur*." Baudry-Lacantinière, Vol. 2, p. 448.

" Quand il y a lieu au droit d'accroissement la nullité, la révocation ou la caducité du legs fait a l'un des légataires profite aux autres, au lieu de profiter au débiteur du legs." Ib.

In the pending case there is no accretion possible, as the legacies are neither joint nor universal or residuary.

" Le legs particulier non conjoint (renoncé) quoique valide est sans effet." Laurent, Vol. 14, p. 301.

We therefore conclude that the amount of $2513.22 carried to the credit of " balance for brother and the sisters of M. S. Coste in equal proportions " should be disallowed as improperly credited to them. That inasmuch as there were "general charges and debts amounting to $7436.29," it should be applied toward the payment of this indebtedness.

In accordance with the general contribution heretofore made, the renounced legacy contributed $2933.27. To this must now be added the sum of $2513.22 (total $5446.49), leaving $1989.78 of debts unpaid, to be paid by the legatees, widow M. S. Coste and John Coste, in proportion to the value of the properties specially bequeathed to them as established by their sale under order obtained by the excutrix.

The amounts heretofore charged to the said legatees as their proportion toward paying the debts are deducted, and instead they shall pay their said proportion of the last mentioned amount.

## VI.

Another opponent, W. N. Malone, holds a note drawn by M. S. Coste, dated January 7, 1887, to the order of I. W. Read, transferred to him as a collateral security.

A bill of exception is reserved by opponent to the testimony of a witness, who testified as follows, viz:

" A settlement was made. I obtained from Mr. Read quite a number of notes signed by M. S. Coste of several accounts, all similar in nature to the one sued on here, and more of them endorsed.

" Q. Then according to that settlement, even allowing this note sued on, I. W. Read would be indebted to Coste?

" A. He was.

" Q. Have you a copy of the agreement?

" A. I have it right here."

Counsel for opponent objected to the testimony relating to a settlement and acts and declarations of the transferrer, on the ground that the testimony is *res inter alios acta,* irrelevant and hearsay.

With reference to this bill, we decide:

1. That it relates to a settlement, and is, at most, explanatory.

2. That Read having been the possessor of the note, his declarations and acts prior to the transfer are admissible as rebutting testimony.

The transferee alleges that he is an innocent holder, and has right to its amount.

To recover and secure a better right than had the transferrer to him, the holder must acquire the note before maturity, else it is dishonored paper; its dishonor is apparent.

Chief Justice Shaw impressively states:

" Where a negotiable note is found in circulation after it is due, it carries suspicion on its face."

The question instantly arises, why is it in circulation?

Why is it not paid?

Here is something wrong.

Therefore, although it does not give the endorsee notice of any specific matter of defence, such as set off, payment or fraudulent acquisition, yet it puts him on inquiry; he takes only such titles as the endorser himself had, and subject to any defence which might be made if the suit were brought by the endorser.

If the transferrer still had possession he would be without right; the endorsee from him has no better title.

The transferrer of the note, as a collateral, testified November 23, 1889:

That the note had been transferred after maturity and after the dishonor of the paper.

That he waived protest, after failure to protest, and although he knew that he was not legally bound to the holder.

That he transferred this note as additional collateral security some time after the transaction, in which he had obligated himself to pay

an amount, and to secure which he had already given collateral securities, had been consummated.

The following question was propounded to him as a witness:

"This note in question in suit here against the estate of M. S. Coste was a piece of collateral, as you say, you gave to Mr. Malone as additional collateral, after the two pieces of collateral had been given?"

A. "*I think* it was." [Italics ours.]

Q. "Don't you know it was?"

A. "*Well; I am not willing to swear that it was given to him at any time. I don't want to say the date.* I don't want to give the date, as there was no date on the note at the time the collateral was given. There was no date put there at all."

At another time he testifies that the note represents $1465 worth of exchange sent to M. S. Coste.

When questioned particularly in regard to his indebtedness at the time, he answers that a settlement is necessary to determine.

He had received some $10,000 from Coste for investment, which he says he returned in New York exchange. Coste, it seems, would send him notes which Read, the witness and the transferrer of the note in question, transferred for his own account or for that of the maker.

He explains that the debt was his own (not at all Coste's), which he undertook to secure by transferring this past due paper, without a date.

Paper past maturity was transferred without a date and protest and notice of protest was waived without a date.

The record discloses that the witness made an attempt to return this note to the succession of Coste, but was unable on account of the refusal of the holder to surrender the paper.

After his testimony had been given, on the 27th day of November, 1889, in a settlement in writing, a copy of which is in the record, Read admitted that large profits had been made from the business ventures of Coste and Read, and others were expected.

At the time he surrendered a certain note of $1250, as well as all notes, drafts, papers, writing or obligations held by him *or others for his account*, of M. S. Coste, as duly canceled.

He transferred fifty shares of stocks. He promised to account and pay over to the agent of the succession one-half of the net profits from investments in lands and stocks.

He admitted his liability and gave his note in addition in favor of the succession for the sum of $500.

He promised a statement of the outstanding investment. All this he gave over and delivered to the estate after he had sworn that he did not owe it anything.

It is evident that the note had no consideration at the time it was transferred as a collateral security.

The subsequent transactions, as above stated, do not establish that Read, the transferrer, acquired legal title, for it is not satisfactorily shown that he became a creditor of Coste.

### VII.

By notarial act the late M. S. Coste sold certain property to Aline Villermin. The purchase price declared is $2500 cash.

Upon the face of the papers the sale appears legal.

The opponents allege that this property forms part of the estate.

That no consideration was given by the purchaser; that she was the concubine of the deceased.

In the inventory made after legal notice to the heirs this property is not included.

Any judgment rendered with reference to this property, in those proceedings, to which the ostensible purchaser is not a party, would not affect any interest she may have.

If the sale is simulated and was made *contra bonos mores*, those in interest are not prejudiced by the account and its homologation, and whatever right of action they may have remains unaffected. Whatever issues there may be could not be tried in this suit.

### VIII.

The late M. S. Coste made a note, dated October 25, 1887, to his own order and by him indorsed, of which Alina Villermin is the holder.

She opposes the account, and claims that the amount due her, $2026.24, as shown by this note, should be carried thereon to her credit.

It is urged in defence that it was given without consideration.

The evidence establishes the illicit intimacy alleged.

This circumstance is not sufficient in itself to deny opponent's right to recover on the note, although it casts a suspicion upon the reality of the consideration, which now being at issue, the note must be sustained by proof.   Martin vs. Harrison, 9 An. 234.

The witness testifies that her note included an amount of $960 loaned to Coste in 1884.   She did not hold any evidence of this loan prior to October 25, 1887.

Afterward she loaned him, she says, two or three different sums, with interest, aggregating to the amount of her note.

In 1887, October 4, she bought property from him, for which she paid $2500.   These amounts were not settled at the time, but were allowed to remain.   Nothing was said about the alleged loans.

She says she owned two stores at different times from 1880 to 1883.

She fails to establish from whom they were bought; to whom sold, and her testimony in this, as in other respects, is vague and unsatisfactory, and does not show the reality of the consideration of the note she holds.

Dates are not given; transactions are unsatisfactorily accounted for; unsatisfactory account is given of amounts which witness says have been loaned to Coste.

The testimony altogether is not such as to enable us to reach the conclusion that the holder should recover the amount claimed.

IX.

The only question remaining relates to taxes due the city of New Orleans.

The executrix did not place this claim on her account.

An opposition was filed, and on trial the claim was decreed to be due.

Before this court the legality of this claim has not been questioned. It was due, and properly carried on the account.

\*          \*          \*          \*          \*          \*          \*          \*

Lastly, the motions for a new trial have no merit.

Several were made: only one, that of Malone, is urged at this time.

Due diligence on his part to obtain a new trial was not shown.

The evidence was not discovered subsequent to the trial.

The letter which the opponent had at the time, should have been introduced in evidence, or satisfactory reasons sworn to, why it was not produced.

A new trial will not be granted to enable an opponent to introduce a letter in evidence (or its contents) which he received from his debtor, when it is not alleged why it was not produced or why proof of its contents was not made during the trial.

    ❖       *       *       ❖       *       *       ❖       ❖

The judgment appealed from is amended to conform to this decision.

The amounts of $1668, $2200 and $635, charged respectively to the legatees, Mrs. M. S. Coste and to John Coste, in the judgment appealed from, are not deducted from their respective portions, but to them is now substituted the amount of $1989 78.

| | | |
|---|---|---|
| Debts and charges | | $7,436 27 |
| Amount to pay debts and charges, District Court judgment | $2,933 27 | |
| Added to pay under this decree | 2,513 22 | |
| Balance due | 1,989 78 | —$7,436 27 |
| From Mrs. Coste's legacy is deducted (to pay balance due of $1,989 78) | $1,709 17 | |
| From John Coste's legacy (to pay balance due of $1,989 78 | 280 61 | —$1,989 78 |
| Balance in her favor | $7,873 59 | |
| J. Coste | 615 39 | |
| Total | $8,488 89 | |
| J. Coste's debts | 21,927 65 | |
| Total assets | | $30,416 54 |

After amendment, judgment is affirmed at appellees' costs.