The opinion of the court was delivered by
Watkins, J.
This suit has for object the recovery of two thousand five hundred dollars on deposit in the Whitney National Bank.
It appears that this sum of money was deposited by plaintiff for the account and in the name of his sister, Mrs. Ryter, the defendant, on or about the 29th of June, 1893, his contention being that this deposit was for safe-keeping, merely, during his temporary absence on a visit to California; while that of the defendant, Mrs. Ryter, is that it was an absolute donation to her; or, to employ the language of the plaintiff’s petition, “ that being unmarried, and without forced heirs, it was his purpose and intention to make pro - vision, in the event of his death, for the children of his said sister, *885 Mary Ryter, and that the deposit of the funds as aforesaid was made in view of petitioner’s absence from the State as aforesaid. * *
That said Mary Ryter was fully advised of the purpose and intention of your petitioner and consented to allow the said fund to be deposited in her name, recognizing at all times that your petitioner was the owner of said fund and entitled exclusively to t:ie use and disposition thereof.”
Averring amicable demand without avail, the plaintiff demands possession of said fund and a decree recognizing him as owner thereof; and he prays for the maintenance of his writ of sequestration and the perpetuation of his writ of injunction. The defendant first pleaded a general denial, and subsequently amended her answer and specifically denied that she held this fund in trust, and, on the contrary, averred that the plaintiff had made her an absolute donation of it. On the trial there was judgment in favor of the plaintiff for the sum of two thousand five hundred dollars, less fifty dollars that had been checked out of bank by Mrs. Ryter; and the latter has appealed.
All parties admit that the relation of the Whitney Bank to the other parties to the suit is that of a mere stakeholder, and without interest in the result of the controversy.
Aside from the fact that the fund was deposited in bank by the plaintiff to the credit of the defendant, there is but little evidence which throws any light on the controversy, outside of the evidence of the parties to the suit; and the substance of the story of each is of like character, as their respective judicial declarations.
The following points are collated in the plaintiff’s brief as those established by the evidence, and relied upon by him as showing that no gratuitous donation was intended by him, to-wit:
“The parties, though brother and sister, had not visited one another or been on speaking terms for several years, and they had no love nor affection for each other.
“ That the plaintiff had not approved or liked the deceased husbands of the defendant.
11 The plaintiff gave to the defendant, immediately before making the deposit in the bank, twenty dollars with which to purchase such necessaries as she might need.
“The defendant asked permission of the plaintiff to draw on the amount deposited in case of necessity, and this permission was granted by the plaintiff after the deposit had been made.
*886 “ The defendant, according to her own testimony, had another source of revenue or livelihood, being the wages of herself and her children, from which her rent was paid and herself and family supported; and independent of this, she expected at the time to sell her house for two hundred and ten dollars. This was known to the plaintiff, and this amount of two hundred and ten dollars, in addition to her wages and the wages of her children, would, under ordinary circumstances, have supported them during the absence of the plaintiff.
‘‘The alleged donation would have left the plaintiff virtually a pauper, and in case of sickness or accident he would be entirely dependent upon the charities of the world, or of a sister, for whom he had no love and affection, and who had none for him.”
In addition to the foregoing, and which are substantially proven by the record, we find and extract from the record the following statements of the plaintiff, viz.: “ Before I left I says to her, ‘ Mary, come with me to the bank, I want to put two thousand*five hundred dollars in your name until I get back from California; but when I get back from California I will try and buy a piece of property to put you and the children in, to keep you from paying rent.’ She went to the bank and I pulled out the twenty-five one hundred dollar bills and handed them to the clerk of the bank,” instructing the bank official to put it in the name of his sister, Mrs. Ryter, the defendant. Coupled with this statement is the positive declaration of the witness that he never gave the money to his sister, but that she was to hold it for him in trust until his return from California.
Again, the plaintiff states that he went with his sister to a real estate agent, the latter introducing him, and he said: “I am glad you are selling that house of hers (Mrs. Rytbr's) because she has never been able to pay any taxes or insurance upon the place; and it was more an incumbrance than a benefit to her. And I told him in the presence of her that if he would negotiate to buy but one of those four corners, that I would buy it and put my sister and her children in it.” He says the sum of one thousand eight hundred dollars was named.
Again, this witness states that he told his sister, that when he returned from, California he would try and get her a house and give her a chance once more to make a living for herself and children; and that he offered her ‘ ‘ a couple of hundred dollars, if she got the *887 grocery, to buy a stock.” He further states that he said when he returned from Oalifornia he would buy a piece of property and put her and the children in it.
The following question and answer puts the plaintiff’s view of the case very clearly:
“ Q. Why was the money placed in the name of your sister — for her or your protection? ”
“A. I put it in her name (so) that if I would get killed she would be the owner of it. It was my money. When I would get back I was supposed to draw it out and buy a house and put her in it.”
“ Q. Did you intend to give her that house if you put her in it?”
“ A. No, sir; because she had a house taken a.vay from her — sold for debt.”
‘ ‘ Q,. Did you make a donation of the two thousand five hundred dollars, involved in this controversy, to your sister? ”
“ A. Give it to her? ”
“ Q,. Yes.”
“ A. No, sir; no, sir; oh, no!”
* * * * * if* s{:
“ Q,. Did you give your sister authority, when you deposited that money in bank in her name, to draw out any part of that money?”
“A. Never. Only in case of sickness or death. I told her she could draw only on that condition; and if Mr. Danziger could purchase that piece of property, for her to give him a couple of hundred dollars to bind the sale, and when I got back I would attend to the rest.”
One of the defendant’s witnesses confirms the story, in reference to the plaintiff’s contemplated investment in property, in which his sister and her children were to live — that “ he would fix up to pay her debts, and she would be on top again.”
The only material difference there is between the statements of the plaintiff and defendant, consists in the fact that the former insists that the money was only entrusted to the latter to be ultimately employed in purchasing a house for the use and occupancy of the latter and her children, while the latter contends that the money was ■actually given to her to enable her to buy a home for herself and children.
She states what she conceived to have been the exact words of the plaintiff, thus:
*888 “ Q. What were his exact words when he spoke to you about giving you this money? ”
“ A. The exact words were (that) this money was to buy a place, and in case of want I could draw and use it. These were the last words I asked him, when he was goiug away. I says, ‘In case I would want money * * * can I draw on that money and use it? ’ He says, ‘Certainly.’ ”
The foregoing is, substantially, all the testimony in this record on the matter in dispute, and, in our opinion, it fully confirms the correctness of the conclusions of the district judge.
Judgment affirmed.
Rehearing refused.