(122 So. 718)

No. 29352.

BUNOL v. BUNOL.

April 22, 1929. Rehearing Denied May 20, 1929.

Delvaille H. Theard, of New Orleans, for appellant.

Spearing & Mabry, of New Orleans, for appellee.

LAND, J. Jacinto Bunol died intestate and left the plaintiff as his surviving widow in community, and four children as his heirs, among them being Joseph A. Bunol, the deceased husband of defendant.

The community property consisted of numerous pieces of real estate, in which Joseph A. Bunol, as the heir of his deceased father, inherited an undivided one-eighth interest, subject to the usufruct in favor of his mother, the plaintiff.

Joseph A. Bunol died at a military camp in the early part of the year 1918. His estate consisted of a lot in the city of New Orleans purchased prior to his marriage, and upon which he erected a residence, and also of an undivided one-eighth interest in the succession of his father, the late Jacinto Bunol.

Joseph A. Bunol left no descendants. Defendant, his wife and universal legatee, thereby became the owner of his interest in his father's estate, and also the owner of an undivided three-fourths interest in the piece of real estate which was her husband's separate property. Plaintiff, the mother of Joseph A. Bunol, also became the owner of the remaining one-fourth interest in the separate property of her deceased son.

In Bunol v. Bunol, 154 La. 159, 97 So. 386, the right of plaintiff, as co-owner with the defendant, to have the lot constituting the separate property of Joseph A. Bunol partitioned by licitation, was recognized and maintained.

This property has been sold at public auction to effect a partition, and was purchased by the defendant, the widow of Joseph A. Bunol, for the price of $8,300.

The partition of the proceeds of this sale and matters incidental to the property and its administration form the subject of the present litigation.

Out of the proceeds of the one piece of separate property owned by her deceased son, Joseph A. Bunol, plaintiff claims that she should be paid at this time an item of $4,226, and an item of $300. These are the principal items in controversy in defendant's opposition to the homologation of the project of partition, which has placed these items under the head of disbursements, or sums due plaintiff.

The surviving widow and universal legatee of Joseph A. Bunol, deceased, resists the payment of these items on the following grounds:

(1) That they are not loans, but are sums given to her late husband in advance of his share in her succession, and not as an extra portion.

(2) That these advances or gifts are donations inter vivos, and are subject to collation only to the succession of plaintiff, the donor, and are not demandable during her lifetime from the succession of Joseph A. Bunol, the deceased son of plaintiff.

On March 14, 1911, after his marriage to defendant, Joseph A. Bunol executed the following acknowledgment before a notary public for the parish of Orleans.

"Mr. Joseph A. Bunol, of full age, residing in this city, who declared:

"That he recognizes having received from his mother, Mrs. Leontine Barrere, widow of Jacinto Bunol, the sum of Four Thousand Two Hundred and Twenty-six Dollars ($4,226.00), cash in hand paid to him, and entirely used. by him in paying for residence recently erected on his property in this city, in the square bounded by South Dorgenois, Canal, Cleveland and South Rocheblave Streets.

"And appearer further declared that the said sum of Four Thousand Two Hundred and Twenty-six Dollars ($4,226.00) has been given to him by his said mother *in advance of his share in his said mother's succession*, but not as an extra portion or advantage; and, therefore, that *the portion to be inherited* by him from his said mother, at her death, *shall be proportionately diminished.*

"And appearer further declared that he hereby binds and obligates himself *to effect said collation by taking less, according to law.*" (Italics ours.)

None of the checks offered in evidence to prove the advance of $4,226, used in the construction of the residence on the separate property of Joseph A. Bunol, is made payable to his order. These checks extend from March 3, 1910, to November 9, 1910. The defendant and Joseph A. Bunol were not married until in the early part of 1911. The acknowledgment by Joseph A. Bunol was made on March 14, 1911, after he was married, and long after the money was advanced to him by his mother, who was usufructuary of his interest in his father's estate.

There is not one word in the acknowledgment which contains a promise to pay to the plaintiff, the mother of Joseph A. Bunol, or to return to her, the sums advanced or any part thereof.

The circumstances surrounding the case exclude any idea of a loan by his mother to Joseph A. Bunol of the sums received, and corroborate the statement made by him in the acknowledgment that the money was given and donated to him "in advance of his share in his said mother's estate, but not as an extra portion or advantage."

The plaintiff herself did not take the stand as a witness, but introduced in evidence the notarial act of acknowledgment made by her son. She has not attempted to deny the statement made by him in the acknowledgment as to the nature of the advances she made to him.

It is expressly stipulated in this acknowledgment that the gift of $4,226 should be subject to collation, and that collation should be made by taking less.

In our opinion, it is immaterial whether such acknowledgment was or was not made, or whether plaintiff accepted or did not accept the same, since the obligations assumed by Joseph A. Bunol in the act of acknowledgment were those which the succession laws

of the state had imposed upon him as a forced heir of his mother, independently of any express obligation upon his part.

▮ "Collation must take place, whether the donor has formally ordered it, or has remained silent on the subject; for collation is always presumed, where it has not been expressly forbidden."

If Joseph A. Bunol had survived his mother, his obligation to collate to her succession could not be doubted, since collation includes everything that may have been received by the heir from the parent himself, save when the latter has indicated unequivocally that it was intended as an advantage. R. C. C. arts. 1230, 1231; Sibley v. Pierson, 125 La. 478, 51 So. 502.

"The obligation of collating is founded on the equality which must be naturally observed between children and other lawful descendants, who divide among them *the succession* of their father, mother and other ascendants; and also on the presumption that what was given or bequeathed to children by their ascendants was so disposed of in advance of what they might one day expect *from their succession.*" R. C. C. art. 1229.

"The collation of goods is the supposed or real return to *the mass of the succession* which an heir makes of property *which he received in advance of his share or otherwise,* in order that such property may be divided together with the other effects of the succession." R. C. C. art. 1227.

"The obligation of collating as confined to children or descendants *succeeding* to their fathers and mothers or other descendants, whether *ab intestato* or by virtue of a testament." R. C. C. art. 1235.

"Such children or descendants only are obligated to collate *who have a right to a legitimate portion in the succession* of their fathers, or mothers, or other descendants." R. C. C. art. 1236.

"The collation is made only to *the succession* of the donor." R. C. C. art. 1242.

▮ If Joseph A. Bunol were alive, the plaintiff, his mother, would be powerless to compel him to collate the advance of $4,226 which he has received from her, since such collation is due *to the succession* of the donor, and not to the donor during his or her lifetime.

Advances made to an heir, and subject to collation, are donations *inter vivos* pure and simple, "by which the donor divests himself at present *and irrevocably* of the thing given in favor of the donee who accepts it." R. C. C. art. 1468.

Joseph A. Bunol, having died, has not succeeded to his mother, and neither his succession, nor his surviving widow as universal legatee, can be compelled ·to collate the advances received by the decedent from plaintiff, his mother.

"Collations are made in kind or by taking less." R. C. C. art. 1251.

The coheirs of Joseph A. Bunol, deceased, will receive his entire interest in the estate of plaintiff, their mother, at her death, less ·the advances received by the decedent, notwithstanding the fact that these coheirs are without right to demand a collation. The plain letter of the law is against plaintiff; as well as against her prospective heirs, in so far as any demand for the restitution of these advances, or for a collation of same, is concerned, to say nothing of the equities of the case in so far as they affect the coheirs of the decedent.

▮▮ 2. The item of $300, however, falls within an entirely different category from that of the item of $4,226.

There is not a scintilla of evidence in the record to show that this latter sum was re-

ceived by Joseph A. Bunol in advance of his share in his mother's estate.

No one is presumed to have intended to make a donation. Succession of Coste, 43 La. Ann. 144, 9 So. 62; Cooney v. Ryter & Whitney Nat. Bank, 46 La. Ann. 883, 15 So. 382.

A daughter of plaintiff testifies that the $300 in question was borrowed by her mother from a bank to lend to Joseph A. Bunol. He received a check payable to his own order for the sum of $233.90. This was advanced to him to buy an interest in a drug store conducted by a Mr. Adrian Arnold. The further sum of $61.60 is represented by a check for taxes due on the residence of Joseph A. Bunol, and was made to the order of the treasurer of the city of New Orleans. These sums aggregate $295.50.

It is clear that the transaction between Joseph A. Bunol and his mother was not a gift to be collated, but a loan to be paid by him, or by his succession after his death.

We are of the opinion, however, that the plaintiff is not entitled to add to the above amount of $295.50 the interest of $4.50 paid by her for the money, which was borrowed from the bank for 90 days.

■ Nor should plaintiff be charged with one-half of $13.50, the cost of an iron fence placed by defendant on the division line between the property to be partitioned and the adjoining property owned by defendant. The interest of plaintiff in the separate property of her deceased son was only an undivided one-fourth, the remaining three-fourths interest being owned by defendant, as the universal legatee of her deceased husband.

Defendant should be condemned to pay one-half of the cost of this fence, plus three-fourths of the other one-half, or the sum of $11.82, and the plaintiff the sum of $1.68, in

proportion to her one-fourth interest and benefit received.

4. In our opinion, the judgment appealed from has correctly estimated the amount of repairs made by defendant on the property to be partitioned, the amount of rents collected therefrom, and also the amount of commissions due and paid by defendant for the collection of the rents.

It is therefore ordered that the judgment appealed from be amended so as to include in disbursements in the project of partition the item "Advanced to Jos. A. Bunol" $295.-50, and that in the item of "Repairs to 116-118 S. Dorgenois Street," changed from the sum of $966.92 to $990.67 in the judgment of the lower court, that defendant be charged with $11.82 and the plaintiff with $1.68, as the proportionate share of each for cost of construction of the iron division fence, at the price of $13.50.

It is now ordered that the judgment as amended be affirmed, and that defendant appellee pay the cost of appeal.