LAND, J.
James S. Zacharie died February 12, 1906, leaving an estate appraised at $44,657.13. The decedent left a last will and testament by which, after making certain special legacies, he bequeathed the residuum of his estate to his brother and sisters and his niece, Florence Ellis. Among the special legacies was one to his sisters, Emma and Florence, of a policy of life insurance for $5,000 and $5,000 in money.
This will was executed on March 13, 1903. It appears from the evidence that the policy was in favor of the two sisters, and was collected July 20, 1904, and placed to their credit in the Germania Savings Bank & Trust Company.
On September 5, 1905, the sum of $8,000 was placed to the credit of the same account.. This amount represented the price of certain real estate belonging to James S. Zacharie, which was collected and deposited by his sister Emma, acting as agent, during; his absence in Europe. After his return. James S. Zacharie, with a full knowledge of' all the facts, permitted this money to remain to the credit of his sisters, and this-was the situation at the time of his death. The two sisters were unmarried, and had lived with their brother for a number of years.
James S. Zacharie represented a number-of nonresident landlords as agent for the-purpose of leasing houses and collecting rents. At the time of his death he had in dispossession a large number of rent notes belonging to his clients and owed them an, accounting of moneys collected.
William J. Hardee, one of the executors, resigned, leaving Emma C. O. Zacharie sole-executrix. By consent of all parties in interest the executrix proceeded informally to-settle the claims of the creditors, and a few months subsequent to her appointment filed an account, styled “provisional,” showing the-liabilities and assets of the succession.
This account was opposed by three of the-residuary legatees on various grounds. Many of the objections were leveled against the-form of the account, assailing it as incomplete, obscure, and indefinite. The real crux of the opposition, however, was that the sum of $8,000, collected by Emma O. O. Zacharie,. as agent, as already stated, should be placed on the account as an asset of the succession.
The opposition was sustained as to a number of minor items, but was overruled as to-the principal demand. The opponents alone-have appealed from the judgment. The answer of the executrix appellee, filed after the-submission of the cause in this court, comes, too late, and therefore cannot be entertained. Code, Prac. art. 890.
*153 The account was provisional, and the existence of the liabilities was not disputed. The objection that the account did not show what credits the decedent was entitled to •in the settlements made with the creditors was removed by the evidence, and proper •deductions were allowed therefor in the judgment of homologation. The account •being merely provisional, the opponents will have hereafter an opportunity to insist on a full and complete accounting at the hands •of the executrix. The object of the provisional account seems to have been to show ■the liabilities of the estate, paid or to be paid, pursuant to the agreement of all the parties in interest.
The real matter in litigation is the demand ■of the opponents that the sum of $8,000, collected and deposited as aforesaid, be adjudged to belong to the succession. The objection to urging such a demand by way of •opposition to a provisional account has been waived by the written consent of the opposing parties that the issue be determined in •this proceeding.
The sisters, Emma and Florence, claim •said amount as a manual gift. These two ladies lived with their brother, who always manifested a solicitude for their welfare. Prior to 1903 James S. Zacharie, insured his .'life in favor of his two sisters. In the testament of date March 11, 1903, a policy for $5,000 and a like sum in money was specially bequeathed to them. On the death of the testator another policy for $2,000 in favor •of the same sisters was found among his papers.
The policy for $5,000 was in favor of the two sisters, and when it matured, in July, 1904, the proceeds, amounting to $6,812.50, was collected by Emma Zacharie and deposited with the Germania Savings Bank & 'Trust Company to the joint credit of the two sisters. This particular fund seems to Pave been administered by James S. Zacharie as the agent of his two sisters. The pass book shows that moneys were withdrawn, and moneys were deposited, and also that sundry notes were deposited for collection. James S. Zacharie withdrew moneys from this fund on the written orders of his sisters and on presentation of the pass book, as required by the rules of the institution.
In the summer of 1905 James S. Zacharie, on the eve of his departure for Europe with his sister Florence, constituted Emma Zacharie as his agent, for the purpose of signing an act of sale of certain real estate and collecting the price, amounting to, $8,000. On August 21, 1905, Emma C. O. Zacharie withdrew $800 from the savings bank and used the money in the payment of certain bills due by her absent brother. On September 5, 1905, she collected the $8,000 and deposited the same in the savings bank to the joint credit of herself and sister. On the same day she drew $800 out of the personal funds of her brother in another bank and deposited the same in the savings bank to the credit of herself and sister.
Emma G. O. Zacharie testified that her brother instructed her to sign the act of sale, to collect the price, and to pla'ce the money in the Germania Savings Bank to the account of herself and sister Florence.
Florence D. Zacharie testified that her brother, while in Europe, received a letter from her sister Emma, stating that she had been paid the money for the house, and had put it in the Germania Savings Bank to the credit of herself and sister, and that her brother said:
“That is all right. I told her to put it to that account.”
On his return from Europe James S. Zacharie, with a full knowledge of the facts, did not withdraw any part of said fund or change its destination. On the contrary, he caused the pass book to be balanced on December 31, 1905, and the accrued interest to *155 be placed to tbe credit of his sisters. He died on February 12,1906, with tbe pass book in bis possession.
While as a general rule testimony as to the oral declarations and admissions of a dead man are of but little weight, we think, with the judge a quo, that in the instant case the testimony of the two sisters is so strongly corroborated by the actions and conduct of their brother that their statements are entitled to full faith and credit. James S. Zacharie had for years manifested a tender solicitude for the future welfare of his two dependent sisters, members of his household.
The deposit of this $8,000 to their credit was but a continuance of his - benefactions and was well within his means. His other sisters were married and settled in life, and his sole brother was a lawyer of prominence. All the facts and circumstances show an intention to give, consummated by a real delivery. Civ. Code, art. 1539. There can be no question of the fact of delivery, since the fund was placed in the power and possession of the two sisters. Civ. Code, art. 2477. The fund was put beyond the control of the donor, and he could not withdraw the same, or any part thereof, without the written consent of the donees. The manual gift thus made was irrevocable, and could not be affected by the subsequent declarations of the doner that be intended to invest tbe fund in bank stock, or that it was a provision made for his sisters in case of his death. Janies S. Zacharie was an intelligent business man, and must be presumed to have intended the legal consequences of his own acts. Considering 'the relations existing between him and his dependent sisters, the transaction can be considered in no other light than a donation. The deposit was not for some purpose connected with his temporary absence, because after his return, and down to the time of his death, the situation remained unchanged. The fact that he owed debts, and did not draw on this fund to meet them, shows that be considered tbe money as dedicated to tbe use of bis sisters. James S. Zacbarie treated this particular fund in the same manner as-he treated the insurance money belonging to-his sisters. Both figure as items in the same-deposit account, and both were merged in the-balance of December 31, 1905. The inevitable conclusion, drawn from the actions- and conduct of James S. Zacharie, that this deposit was intended as a donation, is confirmed by the testimony of the two sisters. The simple, direct, and positive testimony of Florence D. Zacharie that her brother gave them all the sums of money entered on the-pass book to their credit is not impeached, even by a cross-examination. The testimony of the other sister, though open to verbal criticism and erroneous in some respects as to dates and details, is corroborated in essentials by her sister, the pass book, and. the actions and conduct of her brother.
The case as presented is one where the-owner of the money directed bis agent to deposit the sum when collected to the joint, account of the agent and another person. On the principle of “qui facit per alium facit per se,” the subsequent deposit was in law one made by the owner himself. The savings bank received the money as the agent of thedonees. In Chachere v. Dumartrait, 2 La. 41, a son-in-law sold real estate belonging, to his father-in-law, which the latter intended to donate to his daughter. The father-ratified the sale, and thereupon the price was-paid to his son-in-law. The court held that-the husband received the money as a donation to bis wife and as her agent, and that tbe manual gift was as fully executed as if tbe money had been delivered from the father to his daughter.
In Cooney v. Ryter and Bank, 46 La. Ann. 883, 15 South. 382, the deposit in bank was-shown by the evidence to have been made-pursuant to a previous agreement and for a certain purpose, which was not fulfilled. *157 On proof of the trust nature of the agreement, the owner was permitted to recover the fund. In Succession of Sinnot v. Bank et al., 105 La. 706, 30 South. 233, one of the defendants claimed title by a pretended donation to certain certificates of stock which belonged to the decedent. It appears that the certificates had never been indorsed, and therefore were not transferable by mere delivery. It further appeared that the title was not to pass until after the death of the owner. The court held that there was no donation, either inter vivos or mortis causa. In the case at bar the thing donated was money, and there was no condition attached to the gift at the time it was made. Emma Zaeharie in the course of her testimony details several conversations she had with her brother. One of these refers to a date shortly after the insurance money was deposited, in July, 1904. The witness testified that her brother said “that he intended to add to and turn over the amount invested, to add to it constantly, and that he would leave us at his death a nice sum.” The other two conversations took place after the return of the brother from Europe, and related to the deposit of the $8,000. The witness testified that her brother said:
“Emma, you should not have touched it at all. That is for you and Florrie, in case of my death.”
This conversation refers to the $800 drawn and used for account of her brother during his absence. The witness was probably mistaken in her statements that this sum constituted a part of the $8,000, as the pass book shows that it was drawn a few days before the deposit of that amount from other funds belonging to the sisters. On another occasion, as testified by the witness where her brother stated that he would have to raise some money, she offered to lend it to him, but he replied:
“No, you don’t understand the importance of that. That must not be touched, because that is for you and Florrie in case of my death. You girls don’t understand the importance of it at all."
In commenting on this evidence the district judge said:
“The remarks of the deceased certainly showed his motive for the gift to his sisters, but not the nature of the gift. He gave to them, as-testified by them, a certain amount of money, so that they might have that sum after his death. This was an actual donation, accomplished during his lifetime.”
In the Sinnot Case, the decedent expressly stated that the property was not to pass until after her death. In the case at bar the-money was delivered and the title passed during the lifetime of James S. Zaeharie. The fact that he regarded his benefactions as-a provision for the support of his dependent sisters, in case of his death, does not change-the nature of the donations. He wisely placed the funds to the credit of his sisters-in a savings bank, and by so doing assured their future against the accidents of a business life and the contingency of his death.. This object could only have been accomplished by divesting himself irrevocably of his-ownership.
We see no good reason to reverse the conclusions of the district court, and the judgment appealed from is therefore affirmed.