THE ESTATE OF DR. CHARLES JEFFERSON MILLER, THE HIBERNIA NATIONAL BANK IN NEW ORLEANS, TESTAMENTARY EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 94006.    Promulgated June 23, 1939.

*Percy S. Benedict, Esq.*, and *Burt W. Henry, Esq.*, for the petitioners.

*Joe D. Hughes, Esq.*, and *William P. Blake, Esq.*, for the respondent.

OPINION.

SMITH: The question presented by this proceeding is whether the respondent erred in including in the gross estate of the decedent, Charles Jefferson Miller, $69,464.07 representing the corpus of the trust created by the decedent on June 30, 1921. The respondent contends that he did not err and that the entire value of the corpus of the trust constituted a part of the gross estate of the decedent

and not one-half of the value thereof, which would be the case if the fund was includable in the gross estate.

In his deficiency notice the respondent states:

It is contended that the transfer by the decedent formed no part of his gross estate on the date of death. Clause five of the trust instrument reads as follows:

"That in the event of the death of the Donee, or the expiration of this agreement before the death of the Donor, said bonds and the income accumulated therefrom shall revert to the Donor."

The trust agreement clearly indicates the length of time it will remain in force is limited to ten years from the date of the agreement. As no new agreement was created or provision made by the donor as to the disposition of the property, upon expiration of the trust agreement the Bureau considers that the property in question reverted to the donor. The language of the trust agreement does not appear to be ambiguous, but clearly shows the intention of the donor at the time it was created.

On brief the petitioner contends:

* * * that the Donation *Inter Vivos* was complete and irrevocable when made by Dr. Miller, and accepted by him for his daughter, and that Article 5 has reference only to the administration of the securities by the Trustee, and that the provision,

that in the event of the expiration of the agreement before the death of the donor, the bonds and the income accumulated therefrom should revert to the donor,

is so contrary to and violative of the provisions of the law of Louisiana relating to gratuitous donations, *Inter Vivos*, that when construed in the light of the conduct of the parties at the time of and following the making of the donation, must be reputed as not written; or in any event, as referable to the trust only.

Under the laws of Louisiana donations *inter vivos* are of three kinds:

(a) The donation purely gratuitous, or that which is made without condition and merely from liberality;

(b) The onerous donation, or that which is burdened with charges imposed on the donee;

(c) The remunerative donation, or that the object of which is to recompense for services rendered.

We think there is no question but that the donation, if it was a donation under the laws of the State of Louisiana, was a gratuitous donation and was without any charges or conditions. It was made merely because of the love and affection of the donor for his daughter. No burden was imposed upon the donee by the instrument of donation and, as no services were required to be rendered or performed by the donee, the donation can not be classed as either an onerous or a remunerative donation.

Under the Revised Civil Code, article 1527, by which the interpretation of the act of donation must be governed, the donor may

impose upon the donee any charges or conditions that he pleases provided they contain nothing contrary to law or good morals.

Under the jurisprudence of Louisiana the word "charges" can only mean that a burden is placed upon the donee to do something that is required to be done by the donor, such as to pay taxes, etc.

The Supreme Court of Louisiana, in interpreting articles 1527 and 1559 of the Revised Code in the case of *Voinche* v. *Town of Marksville*, 124 La. 712; 50 So. 662, held as follows:

> The donor may impose on the donee any charges or conditions he pleases, provided they contain nothing contrary to law or good morals. Civ. Code, Art. 1527. Donations *inter vivos* are liable to be revoked or dissolved on account of nonperformance of the conditions imposed on the donee. Id. Art. 1559. The word "conditions" as used in this article, is synonymous with the word "charges"; and when a donation contains charges it is considered as made under the condition that it may be dissolved or revoked if they are not executed. Mourion, Examen Du Code Napoleon, vol. 2, p. 366. *"Conditions" mean charges or obligations of the donee.* Delloz, Repertoire de Legislation, Supplement 5, No. 404, p. 149.

It will be noted that the instrument of donation provides "That this agreement is made under the provisions of Act 107 of 1920." The creation of trusts is not contemplated by the Civil Code of Louisiana. There was no provision of a Louisiana Statute for the creation of trusts prior to Act 107 of 1920. Section 1 of that act provided:

> It shall be lawful for anyone to make a donation *inter vivos* or *mortis causa* of any kind of property, and of any amount, whereby an individual or individuals or, a bank or banks now or hereafter organized under the laws of this state for the purpose of conducting savings, safe deposit and trust banking business, or which have accepted the provisions of law relative thereto, and banks organized under the acts of congress of the United States, are designated as trustee or trustees; provided, however, that nothing in this act shall be construed to affect the law in regard to the disposable portion, save that it shall be permissible to provide that the legitime or any portion thereof of any forced heir or heirs shall be administered in trust for his or their benefit by said trustee or trustees, the income to be paid annually or oftener to said forced heir or heirs, or his or their legal representatives.

Section 2 of the same act provides:

> * * * the period of duration of said trust, which shall not exceed ten years after the death of the donor, except when the beneficiary is a minor at the time of the death of the donor, in which case it shall not exceed ten years after the minor has attained majority. * * *

Section 16 of article 4 of the Statutes of Louisiana, adopted June 18, 1921, provides:

> * * * No law shall be passed abolishing forced heirship or authorizing the creation of substitutions, *fidei commissa* or trust estates; except that the legislature may authorize the creation of trust estates for a period not exceeding ten years after the death of the donor; provided, that where a natural person

is the direct beneficiary said period may be made to extend until ten years after his majority; * * *

The respondent submits that the instrument of donation is unambiguous; that it created a trust which was to continue for a period of 10 years, at the end of which time the donated bonds and the accumulated income therefrom should revert to the donor. This argument overlooks, however, the fact that the instrument also provides:

That in the event of the death of the Donor, while the Donee is still a minor, the income from said bonds shall be paid over to the tutor or guardian of said minor for her support, or if she shall have reached her majority, the annual income will be paid to her during the life of this trust agreement.

Of course, if it was the understanding of the donor that the period of the trust instrument was to expire on June 30, 1931, the beneficiary would not have reached her majority during the life thereof. Why then should the instrument make any reference to the beneficiary reaching her majority during the life of the instrument?

In the circumstances of this case the Board is of the opinion that it is unnecessary to determine whether the donation made by the decedent on June 30, 1921, was an irrevocable donation.

The petitioner contends that if the donated bonds and the accumulated income therefrom reverted to the decedent ten years after the date of the instrument of donation, there was, nevertheless, a manual delivery of the fund to Elizabeth Miller after that date and prior to the close of 1933. We sustain this contention.

There can be no question that the decedent considered the corpus and income of the trust fund as Elizabeth Miller's on and after May 20, 1933, at which date she attained her majority. The decedent was in close touch with the Hibernia National Bank. That was where he had his bank account. He always referred to the trust fund as constituting the property of his daughter, Elizabeth. He never made any claim to any part of the fund or the income therefrom. The bank's officers considered the property as belonging to Elizabeth Miller and not to the decedent. With the knowledge of the decedent the bank carried on correspondence with Elizabeth Miller and obtained her permission for the transfer of the securities from the Hibernia Bank & Trust Co. in Liquidation to the Hibernia National Bank.

It is also to be noted that under the instrument of donation the bank was entitled to receive a fee of 5 percent per annum on the natural income from the bonds and from any other bonds in which the accumulated income might be invested. Elizabeth Miller, however, made an agreement with the Hibernia National Bank that its compensation for services rendered should be 3 percent on all coupons collected and 2 percent on all dividends collected. This was not an

arrangement by the decedent with the bank but an arrangement between the bank and Elizabeth Miller.

The respondent insists that there was no manual delivery of a gift by the decedent to Elizabeth and the officers of the bank were unable to testify that the decedent ever stated to them after June 30, 1931, that he was making a gift of the fund to Elizabeth. The evidence plainly shows, however, that the decedent at all times considered the fund and accumulations thereof as belonging to Elizabeth and that she with the knowledge of her father dealt with the fund as her own and in 1933 received money from the fund to complete her education and thereafter received the income from the fund.

In *Lunsford Richardson*, 39 B. T. A. 927, we said:

It is well settled that before there can be a completed gift the donor must surrender dominion and control of the subject matter of it. *Edson* v. *Lucas*, 40 Fed. (2d) 398; *Allen-West Commission Co.* v. *Grumbles*, 129 Fed. 287; *Delight Ward Merner*, 32 B. T. A. 658; 79 Fed. (2d) 985; *Adolph Weil*, 31 B. T. A. 899; 82 Fed. (2d) 561; certiorari denied, 299 U. S. 552; *Jackson* v. *Commissioner*, 64 Fed. (2d) 359; *Dulin* v. *Commissioner*, 70 Fed. (2d) 828. The "delivery" must be as perfect as the nature of the property and the circumstances and surroundings of the parties will reasonably permit. *City Bank Farmers Trust Co.* v. *Hoey*, 23 Fed. Supp. 831; *In re Van Alstyne*, 207 N. Y. 298; 100 N. E. 802. Manual delivery of the thing given is not necessary, *Owen* v. *Commissioner*, 53 Fed. (2d) 329; and delivery need not be made directly to the donee. The gift may be executed by delivery to a third person for the benefit of the donee where there is an intention that present title and ownership shall pass and appropriate language is employed to effect such intention. *Grissom* v. *Sternberger*, 10 Fed. (2d) 764. In such instances "constructive delivery is recognized, not on principles of agency, but because the third person becomes a trustee for the donee." *Dulin* v. *Commissioner, supra*. The fact that such third person also acted as agent of the donor does not affect the validity of the gift nor prevent title to the subject matter from passing to the donee. *Bingham* v. *White*, 31 Fed. (2d) 574; *Copland* v. *Commissioner*, 41 Fed. (2d) 501; but "If the donor deliver the property to the third person simply for the purpose of his delivering it to the donee as the agent of the donor, the gift is not complete until the property has actually been delivered to the donee." *Bickford* v. *Mattocks*, 95 Me. 547, 550; 50 Atl. 894, 895. Cf. *Vincent* v. *Putnam*, 248 N. Y. 76; 161 N. E. 425.

In *Succession of Zacharie*, 119 La. 150; 43 So. 988, the Supreme Court of the State of Louisiana said:

The manual gift—that is, the giving of corporeal movable effects, accompanied by a real delivery—is not subject to any formality, Civ. Code, art. 1539. If the donation has been executed by delivery, it has full effect though not accepted in express terms. Civ. Code 1541.

\*      \*      \*      \*      \*      \*      \*

Where the decedent, an old bachelor of means, caused a certain sum of money to be deposited in a savings bank to the credit of his two dependent sisters, living with him, the delivery to the bank was a delivery to the sisters, and the donation had full effect *eo instante*.

The above cited case was referred to with approval in *Gibson* v. *Hearn*, 164 La. 65; 113 So. 766, in which the Supreme Court of Louisana said:

Money may be donated by manual gift, *Succession of Hale*, 26 La. 195. And in the *Succession of Zacharie, supra,* it was held to be an unconditional donation of money where the decedent, a bachelor of means, caused a certain sum of money to be deposited in a savings bank to the credit of his two dependent sisters living with him, the delivery to the bank being a delivery to the donees, the donation becoming effective *eo instante.*

In *Succession of Moore*, 40 La. 531; 4 So. 460, it was held:

Bonds payable to bearer, and title to which is transmissible without endorsement or assignment, but, by simple delivery, may be the objects of a manual gift, and are not required to be donated by authentic act. This sort of donation is subject to no formality.

Upon the authority of the cases above cited, the Board concludes that the entire trust fund in the possession of the Hibernia National Bank to the credit of Elizabeth Miller at the date of decedent's death formed no part of the decedent's gross estate.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*