561 So.2d 125 (1990)
Bert Fowler ALLBRITTON, Plaintiff-Appellant,
v.
Linda Tannehill ALLBRITTON, Defendant-Appellee.
No. 88-1035.
Court of Appeal of Louisiana, Third Circuit.
March 14, 1990.
Rehearing Denied April 23, 1990.
Writs Denied June 29, 1990.
*126 William J. Perkins, Columbia, for plaintiff-appellant.
J.P. Mauffray, Jr., Jena, for defendant-appellee.
Before DOMENGEAUX, C.J., and FORET, DOUCET, KNOLL and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether gifts of money and furnishings made during the marriage are separate property or community property and whether an attorney's fee incurred during the marriage, in connection with a DWI, is a separate or community debt.
Bert Fowler Allbritton (hereinafter plaintiff) filed a petition against his wife, Linda Tannehill Allbritton (hereinafter defendant), from whom he was legally separated, for a partition of the community property. After trial on the merits, the trial court classified certain gifts made during the marriage, by defendant's grandmother and defendant's father, as defendant's separate property and accordingly awarded her the property and reimbursement from the matrimonial regime for her separate funds she spent for the benefit of the community. The trial judge also classified plaintiff's attorney's fees, incurred during the marriage as a result of a DWI, as his separate debt. On the basis of this classification of the gifts and debt the trial court ordered a partition of the community. Plaintiff appeals. We affirm in part, reverse in part, amend in part; and render judgment.

FACTS
Plaintiff claims that the moveable property listed below consists of gifts, given by defendant's grandmother, Mrs. G.M. Tannehill, and defendant's father, Mr. G.F. Tannehill, to the community. Defendant claims that this property consists of gifts to her only, and therefore, is her separate property. This moveable property is described and valued as follows:

 ITEM DONOR VALUE
 1. Two Lazy Boy Recliners Mrs. G.M. Tannehill $ 175.00
 2. Sofa Floral Print Mrs. G.M. Tannehill 75.00
 3. Two 42" Brass Lamps Mrs. G.M. Tannehill 30.00
 4. Cherry Bedroom Set Mrs. G.M. Tannehill 750.00
 5. 42" Brass Lamp Mrs. G.M. Tannehill 30.00
 6. Maple Table w/8 chairs Mrs. G.M. Tannehill 1,000.00
 7. 35" Wooden/Brass Lamp Mrs. G.M. Tannehill 30.00

*127
 8. 42" Brass Lamp Mrs. G.M. Tannehill 35.00
 9. Silver Flatware Mrs. G.M. Tannehill 4,902.00
10. Whirlpool Microwave Oven Mr. G.F. Tannehill 50.00
11. Whirlpool Supreme Washer Mr. G.F. Tannehill 200.00
 _________
 TOTAL VALUE $7,277.00

Defendant also claims that she is entitled to reimbursement, in the amount of $62,412.54, from the community for community debts she paid with her separate funds. Defendant claims that the funds used to pay these community debts were separate gifts to her from her father and grandmother, while plaintiff claims they were gifts to the community. These gifts are:

1. Gift from Mrs. G.M. Tannehill to Linda Tannehill Allbritton
 used to pay Troy and Nichols (paid off house note). $10,430.00
2. Gift from Mrs. G.M. Tannehill to Linda Tannehill Allbritton
 used to pay Don Corley (paid for improvements on the house). 11,481.57
3. Gift from Mrs. G.M. Tannehill to Linda Tannehill Allbritton
 used to pay Wood Branton (purchase of two lots). 2,500.00
4. Gift from G.F. Tannehill to Linda Tannehill Allbritton used to
 pay Federal Land Bank (paid off mortgage on second house). 36,000.97
5. Gift from G.F. Tannehill to Linda Tannehill Allbritton
 used to pay Eual Douglas (downpayment on purchase of land). 2,000.00
 ___________
 Total $62,412.54

Plaintiff claims that he is owed reimbursement by the community for $750.00 for attorney's fees incurred during the existence of the community in his defense of a DWI charge.
The trial court held that all of the gifts from defendant's father and grandmother were defendant's separate property, and that defendant was entitled to reimbursement from the community to the extent they were used to pay community debts. The trial court further held that plaintiff's attorney's fee, incurred during the community in defending his DWI charge, was a separate debt for which plaintiff was not entitled to reimbursement from the community. Plaintiff appeals contesting both of these findings and the partition of the community based on these findings.

LAW
There is no dispute that the gifts made by Mrs. G.M. Tannehill and Mr. G.F. Tannehill to the defendant were valid donations. The only issue with respect to these gifts is whether the donors intended their respective donations to be gifts to the community or to the defendant only. Under Louisiana law, the intention of the donor controls the identity of the donee or donees. Hamilton v. Hamilton, 381 So.2d 517 (La.App. 1 Cir.1979).

Gifts from Mrs. G.M. Tannehill
At trial there was little evidence presented as to the intent of Mrs. G.M. Tannehill, defendant's grandmother as to the gifts of cash. Plaintiff testified that the gifts were for both him and his wife and that Mrs. G.M. Tannehill liked him. Defendant testified the gifts were strictly to her from her grandmother for her benefit. Since Mrs. G.M. Tannehill had passed away before the trial, there is no other evidence as to the intent of Mrs. G.M. Tannehill with regard to the cash gifts or with regard to the two recliners, sofa, five brass lamps, or dining table and chairs. As to the silver flatware, the evidence shows that a set of silver flatware was given to both the plaintiff and the defendant at a wedding shower, and that the flatware given at the wedding shower was admitted by defendant to be community property. The additional pieces of flatware, according to defendant, were to finish out the set.
*128 The burden of overcoming the presumption of community property set out in La. C.C. Art. 2340 rests upon the party who asserts that the property is separate. To meet this burden, the proof must be clear, positive and of a legally certain nature that the property was separate instead of community. Allen v. Allen, 539 So.2d 820 (La.App. 3 Cir.1989), writ den., 541 So.2d 840 (La.1989); Succession of McVay v. McVay, 476 So.2d 1070 (La.App. 3 Cir. 1985). Under this standard, it is clear that defendant has not carried her burden of proving that the non-cash gifts from Mrs. G.M. Tannehill were her separate property. There could be no testimony from Mrs. G.M. Tannehill, since she was deceased, and defendant offered no other proof, other than her self-serving testimony, that these non-cash gifts were her separate property. Therefore, since the property was in the possession of both parties during the existence of the community of acquets and gains, it is presumed to be community property. La. C.C. Art. 2340.
Mrs. G.M. Tannehill also made three cash gifts. The first of these was a check in the amount of $10,430.00 made payable to Troy & Nichols to pay off a mortgage note on a house which was the community property of plaintiff and defendant. There is no other evidence, except for the self-serving testimony of both plaintiff and defendant, of the intention of Mrs. G.M. Tannehill with regard to this gift. Therefore, defendant has not met her burden of proof. This gift, like the non-cash gifts discussed above, was used to benefit the community and was received during the existence of the community. Therefore, we find that this cash gift was community property. La. C.C. Art. 2340; See also Hamilton v. Hamilton, supra, where in the absence of proof of intent, the nature of the property is relevant in deciding whether property is separate or community.
The other two cash gifts given by Mrs. G.M. Tannehill were for improvements to the house owned in community by plaintiff and defendant, and to buy land, also owned in community, by plaintiff and defendant. The gifts were respectively in the amounts of $11,481.57 and $2,000.00. Mrs. G.M. Tannehill wrote the checks for these amounts, made payable only to defendant. Defendant deposited these checks into a joint checking account held by her and plaintiff. Defendant then used the money to pay community creditors. These funds are traceable and are not community simply because they were deposited in a joint account. See, Curtis v. Curtis, 403 So.2d 56 (La.1981). However, we find that the trial court clearly erred in finding these two gifts to be defendant's separate property. The fact that these checks were made payable to defendant is not of itself enough, when the gift was given for the purpose of paying a community debt, to overcome the presumption of community when the donor, Mrs. G.M. Tannehill, did not testify as to her intent.
For these reasons, we find that the trial judge was manifestly erroneous and clearly wrong in classifying these gifts from Mrs. G.M. Tannehill as separate property of the defendant and in allowing her reimbursement from the community for these funds.

Gifts from Mr. G.F. Tannehill
Defendant testified that the microwave oven and the washer were bought with cash she received as a Christmas gift from her father. Plaintiff stated that he did not know where defendant obtained the money to buy the microwave and washer. Plaintiff did not contradict defendant's assertion, nor claim that the appliances were bought with community funds. Mr. G.F. Tannehill testified he intended the cash as a personal gift to his daughter. Under these circumstances, we find that plaintiff has carried her burden of proving that the microwave and washer are her separate property.
Mr. G.F. Tannehill also wrote a check in the amount of $36,000.97 made payable to the Federal Land Bank. This check paid off the mortgage on a second house which was the community property of plaintiff and defendant. The last gift was a check from Mr. G.F. Tannehill in the amount of $2,000.00 made payable to defendant. This money was to be used and *129 was in fact used as a down payment on a piece of land purchased by plaintiff and defendant as community property. This check was deposited by defendant in the joint checking account she held with plaintiff. Defendant then wrote another check drawn on the account to make payment for the community.
Mr. G.F. Tannehill testified that he intended these two gifts to be only for defendant's benefit, though he knew that in reality plaintiff would benefit as well. Mr. G.F. Tannehill also testified that he and plaintiff treated each other politely but that plaintiff had not married his daughter with his blessing. Plaintiff agreed with this assessment of Mr. G.F. Tannehill's relationship with him. Defendant also testified that these gifts from her father were intended to be her separate property. Taking into account this evidence, and the fact that one check was made out exclusively to defendant, we find that the trial court did not clearly err in concluding that these two gifts were the separate property of defendant. The trier of fact, who has the unique advantage of hearing and viewing evidence when given, is not to be reversed on an evaluation of credibility which furnishes a basis for the trial court's finding of fact unless that finding is manifestly erroneous. Patin v. Patin, 462 So.2d 1356 (La.App. 3 Cir.1985), writ den., 466 So.2d 470 (La.1985), citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For these reasons, we find that the trial judge was correct in finding the microwave oven and washer were defendant's separate property and that the gifts by Mr. G.F. Tannehill to defendant in the amounts of $36,000.97 and $2,000.00 were defendant's separate property and, even though used for the benefit of the community by defendant, that she was entitled to reimbursement of these sums by the community.

Plaintiff's Attorney's Fee
Plaintiff contends that the trial court erred when it classified an attorney's fee incurred during the existence of the community, as a result of a DWI charge against plaintiff, as his separate debt. Debts acquired during the community property regime are presumed to be community obligations. La. C.C. Art. 2361. Whether or not the DWI charge can be classified as an "intentional wrong" not for the benefit of the community, under La. C.C. Art. 2363, would depend on whether or not plaintiff was on a community mission at the time he was charged. Defendant did not present any evidence to rebut the presumption that the attorney's fee was a community debt or to prove that plaintiff was not on a community mission at the time he was charged with DWI.
Furthermore, though the plaintiff's obligation from the DWI charge may have been a personal responsibility insofar as the criminal consequences, it does not necessarily follow that the fee incurred defending the criminal charge are also his personal responsibility. The attorney's fee may have actually benefited the community, for example, by keeping plaintiff out of jail to support defendant and pay community debts. Regardless, we find that defendant has not carried her burden of proving the debt for the attorney's fee incurred during the existence of the community was the separate debt of plaintiff.
For these reasons, we find that the trial court was clearly wrong and erred in finding plaintiff's attorney's fee, incurred during the existence of the community, were his separate debt. Therefore, plaintiff is entitled to reimbursement from the community for his attorney's fee in the amount of $750.00.

Partition of Assets and Debts
The trial judge, after concluding that all the gifts were the separate property of defendant, allocated the assets and liabilities of the community pursuant to La.R.S. 9:2801. Because we have reversed the trial court with respect to some of these gifts and a debt, it is necessary that the assets and debts be reallocated. When an appellate court has all the facts before it and the issues were litigated below, an erroneous judgment does not warrant a remand of the case and the appellate court may decide the case on the merits. Gonzales *130 v. Xerox Corporation, 320 So.2d 163 (La.1975); Lewis v. WalMart Stores, Inc., 546 So.2d 267 (La.App. 3 Cir.1989), and cases cited therein; LaCaze v. State, Through DOTD, 541 So.2d 322 (La.App. 3 Cir.1989), writ den., 546 So.2d 1224 (La. 1989). Because the record contains all necessary information needed to partition the property, this court will do so.
In order to partition the property, we will take into account certain facts which were stipulated at trial to be:

Value of community property $124,827.48
Unpaid debts of the community owed to third parties
which were not contested by the parties $ 22,491.50
Reimbursement owed to defendant from the
community which was not contested by plaintiff $ 10,371.89
Reimbursement owed to plaintiff from the community
which was not contested by defendant $ 11,193.11

Defendant is entitled to reimbursement from the community in the amount of $48,372.86 [$10,371.89 in separate funds used to pay community debts which is undisputed + the $36,000.97 gift from Mr. G.F. Tannehill used to pay a community debt + the $2,000.00 gift from Mr. G.F. Tannehill used to pay a community debt = $48,372.86].
Plaintiff is entitled to reimbursement from the community in the amount of $11, 943.11 [$11,193.11 representing payments on behalf of the community which are undisputed + $750.00 representing the attorney's fees incurred by plaintiff in defense of his DWI = $11,943.11].
The total assets of the community equal $131,854.48 [$124,827.48 value of the community property + $7,027.00 value of community moveable property received in gifts from Mrs. G.M. Tannehill ($7,277.00 $250.00 = $7,027.00) = $131,854.48].
Finally, the judgment of the trial court placed plaintiff in possession of $41,040.43 of community property and defendant in possession of $90,814.05 worth of community property.
The plaintiff has community property in his possession, as ordered by the trial court, worth $41,040.43, which includes:

 1. Lot Number A of the Sonny King Subdivision Number Two (2)
 of the Town of Tullos, LaSalle Parish, Louisiana, as per plat of
 said subdivision recorded in Conveyance Book 95, Page 652 of
 the Records of LaSalle Parish, Louisiana, under File No.103249 $ 4,000.00
 2. 1983 Ford F-350 LWB Oilfield Bed Pickup Truck (sold 8-25-86)
 VIN 1FDJ3717DKA60124 7,725.00
 3. 1973 Auto Car 12 Yard Dump Truck AB006HBO71851 5,000.00
 4. Case 580D Backhoe/Loader, Serial Number 9054782 20,000.00
 5. 1979 30 Ft. Shopmade Gooseneck Trailer 2,700.00
 6. One 1979 Dilly Boat Trailer, VIN DUR XXXXXXXXX; One Dura
 craft 14 Ft. Aluminum Boat; One 25 H.P. Evinrude Outboard
 Motor 1,000.00
 7. One .22 caliber Blue Steel Revolver with holster 50.00
 8. One lot of furniture and appliances in Tullos dwelling 500.00
 9. Bank of Jena Checking Account No. 9002669 45.43
10. LaSalle State Bank Checking Account No. 0200085 20.00
 __________
 $41,040.43

The defendant has community property in her possession, as ordered by the trial court, worth $90,814.05, which includes:

 1. Lots No. 8 and 9 of the subdivision of the South Half of the
 Southwest Quarter of the Northeast Quarter of Section 36,

*131
 Township 11 North. Range 2 East, LaSalle Parish, Louisiana,
 more particularly shown in survey of Alvin P. Andrews, RLS
 435, dated February 24, 1976, and recorded in Conveyance Book
 88, Page 509 of the records of LaSalle Parish, Louisiana, under
 Registry Number 99248. $73,669.00
 2. 1985 Buick Regal Automobile 8,175.00
 3. Two Octagon End Tables 20.00
 4. One General Electric Console Stereo 100.00
 5. Three Maple Bar Stools 150.00
 6. 1979 Whirlpool Mark 1 Refrigerator 200.00
 7. 1984 Whirlpool Supreme Clothes Dryer 200.00
 8. 1965 General Electric 5 cu. ft. Freezer 50.00
 9. Oak Bedroom Suite (Wendy's) 350.00
 10. Maple Double Bed (Ken) 50.00
 11. Electrolux Vacuum Cleaner 300.00
 12. Checking Account Number XXXXXXX 155.05
 13. Silver Bon Bon Dish 30.00
 14. Silver Bowl 200.00
 15. Silver Pickle Fork 69.00
 16. Silver Teaspoon 69.00
 17. Two Lazy Boy Recliners 175.00
 18. Sofa Floral Print 75.00
 19. Two 42" Brass Lamps 30.00
 20. Cherry Bedroom Set 750.00
 21. 42" Brass Lamp 30.00
 22. Maple Table w/8 chairs 1,000.00
 23. 35" Wooden/Brass Lamp 30.00
 24. 42" Brass Lamp 35.00
 25. Silver Flatware 4,902.00
 __________
 $90,814.05

To summarize these trial court stipulations of fact, the judgment of the trial court, and our judgment on appeal regarding reimbursements to the community:

Value of property in possession of defendant $90,814.05
Value of property in possession of plaintiff 41,040.43
 ------------
Total Community Estate $131,854.48
Less Reimbursement due defendant -- 48,372.86
Less Reimbursement due plaintiff -- 11,943.11
Less Unpaid debts of community -- 22,491.50
 ____________
Net Value of Community $ 49,047.01

Therefore, each party should receive one-half of the net value of the community, or $24,523.50 [$49,047.01 ÷ 2 = $24,523.50]. After reduction of the community property in possession of plaintiff and defendant by the reimbursement owed to each, and without regard to unpaid debts of the community, the net values of the community property in possession of each are as follows:

Plaintiff [$41,040.43 - $11,943.11] = $29,097.32
Defendant [$90,814.05 - $48,372.86] = $42,441.19

The $22,491.50 of community debts are, therefore, allocated for payment as follows:

*132
By plaintiff:
Bank of Jena (Ford Truck) $ 2,992.95
Courtney Equipment Company 429.78
Louisiana Power & Light (Tullos) 25.00
William J. Perkins 750.00
Bank of Jena (Tullos Lot) 5,474.19
Napa Auto Parts 168.00
Wilson Oil Company 242.91
Town of Tullos 10.00
 ----------
 $10,092.83
By defendant:
Electrolux $ 536.14
Internal Revenue Service 334.18
Louisiana Power & Light 110.86
Central Louisiana Telephone (Olla) 23.17
Town of Olla (Utilities) 18.32
American Insurance Company 99.36
J.P. Mauffray, Jr. 720.00
GMAC (Buick Car) 10,556.04
 ----------
 $12,398.61

After this division of assets and liabilities of the community, plaintiff will receive community property with a total net value of $19,004.49 [$29,097.32 - $10,092.83 = $19,004.49]. Defendant will receive community property with a total net value of $30,042.52 [$42,441.19 - $12,398.67 = $30,042.52]. To equalize the value of the net assets received by each, defendant is ordered to pay plaintiff $5,519.01 with legal interest, until paid, from the date this judgment becomes final.
For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. The judgment of the trial court ordering a partition of the assets and liabilities of the matrimonial regime between plaintiff and defendant is amended, as set forth above, and, as amended, is affirmed. All costs of the trial and appellate courts are taxed one-half to each party.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; AND, AS AMENDED, RENDERED.
DOMENGEAUX, C.J., concurs in part and dissents in part, for reasons assigned by KNOLL, J.
KNOLL, J., concurs in part and dissents in part, with written reasons.
KNOLL, Judge, concurring in part and dissenting in part.
I agree with the majority that the donations by the wife's father were gifts only to the wife and not to the community.
For reasons which follow, I respectfully disagree with the majority reversing the trial court on a factual determination that that the grandmother's gifts were the separate property of the wife, and that the attorney's fees were a community obligation.
This case was complicated by the fact that the wife's grandmother was deceased at the time of trial and was thus unable to testify about her donative intent. However, I disagree with the majority's determination that the wife failed to prove that the grandmother intended to donate to the wife only. In making this determination, the majority finds that the only evidence on this issue was the wife's self-serving testimony. The fact that the wife's testimony was self-serving is an insufficient ground to disregard her testimony. Rather, it is a factor which the trial court weighs in its evaluation of the testimony. Lambert v. Heirs of Adams, 325 So.2d 331 (La.App. 3rd Cir.1975), writ denied, 329 So.2d 458 (La.1976). When the donor is deceased, the *133 intentions of the donor can be inferred from the relation of the parties and from all the facts and circumstances of the case. Succession of Zacharie, 119 La. 150, 43 So. 988, 990 (1907).
With regard to the grandmother's checks, the record shows:
(1) the grandmother never gave cash or checks to the husband anytime during the marriage;
(2) the grandmother physically gave the wife the $10,430 check made payable to Troy & Nichols and the wife delivered it to Troy & Nichols where she paid off the mortgage;
(3) the husband testified that he did not recall the grandmother telling him she would pay the Troy & Nichols indebtedness;
(4) all the checks were negotiable instruments under LSA-R.S. 10:3-104 and were valid donations to the wife as to the "form" designated in LSA-R.S. 10:3-201(4).
Taking into consideration the aforementioned corroborative evidence, it is apparent that the trial judge believed the wife's testimony regarding the grandmother's intent. This was a factual determination which should not be disturbed absent manifest error. Succession of Walker, 533 So.2d 70 (La.App. 3rd Cir.1988), writ denied, 536 So.2d 1254 (La.1989). I find the totality of the evidence strong and convincing evidence of the grandmother's intent to donate to her granddaughter only. On the other hand, I find the husband's evidence weakhe relies only upon the use of the money to benefit the community in proving donative intent.
The majority relies upon Allen v. Allen, 539 So.2d 820 (La.App. 3rd Cir.1989), writ denied, 541 So.2d 840 (La.1989), in classifying the gifts from the grandmother as community property because of a failure to prove donative intent. Allen is clearly distinguishable. As pointed out by Judge Guidry's concurring opinion at page 823: "... I believe it to be significant that William Grinnell did not testify and his failure to testify is left unexplained." William Grinnell was not dead as the donor is in the present case. Since the grandmother could not testify because she was dead, the majority looks only to how the gifts and money to the granddaughter were used to prove donative intent. In my view, when the donor is dead and there is other evidence to prove donative intent, use of how the gifts were used is not controlling.
In reaching this conclusion, I find support from Justice Lemmon's realistic observation in Campo v. Campo, 376 So.2d 519, 521 n. 1 (La.App. 4th Cir.1979), writ denied, 378 So.2d 1390 (La.1980). In Campo, the father gave his son $25,000 to build a shrimp boat in his backyard; at the termination of marriage, the wife urged that she had a community interest in the boat. Although in Campo the father testified about his intent to donate only to the son, not the son's wife, and the boat was found to be his separate property, Justice Lemmon stated, "even in the absence of positive testimony of the donor, one could presume a preference for the donor's son when cash is donated by manual delivery to the son without an express intention to donate to both spouses." I find this practical approach especially applicable to the case sub judice. In none of the instances in the present case did the grandmother even present the check to the husband; all actions were either from her to her granddaughter or by her directly to a third-party. Moreover, the grandmother never made the husband a co-payee on any of the checks. Therefore, I find the lack of manual delivery to the husband together with the lack of express intention to donate to both spouses further evidence indicative of the grandmother's intent only to donate to the wife. See also Spaht & Hargrave, Matrimonial Regimes, at 64 (1989).
I now turn to the issue concerning the various furnishings given by the grandmother. As stated above, the focus is primarily on the donor's intent. In the case sub judice, this subjective inquiry is made more difficult because of the death of the grandmother-donor. In reversing the trial court on this aspect of the case, the majority focuses solely on the question of how the items were used.
*134 The jurisprudence has developed a rule that in the absence of evidence of intent, the nature of the property is relevant in deciding whether the property is separate or community. Swilley v. Swilley, 489 So.2d 456 (La.App. 3rd Cir.1986) (no manifest error in the trial court's determination that unspecified furniture and a microwave oven were community property); Campo v. Dupre, 470 So.2d 234 (La.App. 4th Cir. 1985) (a stove and freezer used by both parties were community property); Hamilton v. Hamilton, 381 So.2d 517 (La.App. 1st Cir.1979) (plates, cups, saucers, glasses, trays, etc.gifts of relatively small valuegiven at a wedding shower were community property).
The jurisprudence is clear that use is referred to only in the absence of evidence of intent. As stated hereinabove, when a donor is deceased, donative intent can be inferred from all the facts and circumstances of the case. Succession of Zacharie, supra.
In the case sub judice, evidence shows that all the furnishings were purchased on shopping trips made by the grandmother and wife; in none did the husband accompany them. Moreover, the husband testified that the grandmother never discussed the purchases with him, and never told him that she wanted to give these items to him also. A close reading of the husband's testimony fails to disclose any testimony which would preponderate that the grandmother had donative intent regarding him; his testimony was at times non-responsive, equivocal, and sprinkled with lapses of memory.
Considering the wife's testimony with the circumstances surrounding the gifts and the failure of the husband to establish the grandmother's donative intent regarding him, I cannot say that the trial court was manifestly erroneous in its determination that these furnishings were the wife's separate property. Therefore, I would affirm the trial court's determination that these furnishings were the wife's separate property.
Finally, the majority concludes that the husband's attorney's fees for the defense of a DWI prosecution were a community obligation because the wife failed to rebut the presumption found in LSA-C.C. Art. 2361 that it was a community debt. The majority interprets LSA-C.C. Art. 2363: "would depend on whether or not plaintiff was on a community mission at the time he was charged." I disagree.
LSA-C.C. Art. 2363 provides exceptions to the general rule that it is presumed that an obligation of the community. LSA-C.C. Art. 2363 provides in pertinent part:
"A separate obligation of a spouse is ... one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse. An obligation resulting from an intentional wrong not perpetrated for the benefit of the community, or an obligation incurred for the separate property of a spouse to the extent that it does not benefit the community, the family, or the other spouse, is likewise a separate obligation." (Emphasis added.)
Moreover, Comment (b) to LSA-C.C. Art. 2363 states:
"An obligation incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse is a separate obligation."
The obligation to pay attorney's fees resulted from the husband's commission of a criminal act. In my view, the obligation of attorney's fees for a criminal offense, in this case a DWI, was not perpetrated for the benefit of the community, nor for the common interest of the spouses or for the interest of the other spouse. The determination of whether the attorney's fees are a community obligation or a separate obligation does not turn upon whether the husband was on a community mission. It should be analyzed under Article 2363, i.e., committing an intentional wrong not for the benefit of the community. I fail to see how a DWI offense can benefit the community. The obligation, the attorney's fees, was as a result of the husband's DWI; therefore, I would classify this as his separate obligation. Accordingly, I find that *135 the presumption of community established in LSA-C.C. Art. 2361 is not applicable, and the trial court properly found that this was the husband's separate obligation by virtue of LSA-C.C. Art. 2363.