677 So.2d 663 (1996)
Janice Harmon SIMS, Plaintiff-Appellee,
v.
Gilbert Roland SIMS, Defendant-Appellant.
No. 28470-CA.
Court of Appeal of Louisiana, Second Circuit.
June 26, 1996.
*664 Woodard & Woodard by Russell A. Woodard, Ruston, for Appellant.
Robert W. Sharp, Ruston, for Appellee.
Before HIGHTOWER, BROWN, CARAWAY, JJ.
HIGHTOWER, Judge.
In this appeal from a community property partition judgment, the former husband challenges several aspects of the district court decree. We affirm in part and reverse in part.

BACKGROUND
On November 29, 1988, Janice Harmon Sims petitioned to partition the community of acquets and gains accumulated by her and her ex-husband, Gilbert Roland Sims, prior to their divorce. At a subsequent hearing, although stipulating that their matrimonial regime terminated on July 8, 1988, the former spouses disputed several of their reimbursement demands and the classification of certain properties and debts. Thereafter, based upon extensive reasons for judgment, the trial judge entered a decree resolving the various claims, partitioning the property, and ordering the quondam wife to pay Gilbert the sum of $4,404.15 in settlement. He now appeals, asserting several assignments of error.

DISCUSSION

Criminal Defense Related Attorney's Fees
Appellant first maintains that the trial court incorrectly classified, as his separate obligation, certain attorney's fees incurred in defending a criminal charge brought against him during the marriage. His position is well taken.
In early 1987, prior to the parties' physical separation, Gilbert had a homicide charge leveled against him. Immediately thereafter, *665 Janice accompanied him to hire an attorney to defend against the accusation. Later, in March 1988, a jury acquitted the husband, who had asserted self-defense. His legal fees totaled $45,000, giving rise to the present dispute as to whether the resulting debt should be characterized as a separate or a community obligation.
Debts incurred during the community property regime are presumed to be community obligations. La.C.C. Art. 2361. As an exception, obligations entered into during the legal regime but coming within the few specific categories enumerated in La.C.C.Art. 2363 will be classified as separate obligations, e.g., those resulting from an intentional wrong not perpetrated for the benefit of the community. See Id. Thus, once it has been shown that a debt arose during the community's existence, the presumption of Article 2361 may be rebutted only through the presentation of facts proving that indebtedness instead to be a separate obligation as defined under La.C.C. Art. 2363. See Succession of LeBlanc, 577 So.2d 105 (La.App. 4th Cir. 1991); Allbritton v. Allbritton, 561 So.2d 125 (La.App. 3d Cir.1990), writs denied, 565 So.2d 445, 454 (La.1990).
In the case sub judice, Gilbert testified that he had been charged with a crime during the marriage, had asserted a claim of self-defense, and had been acquitted. He gave no other details about the alleged offense, even on cross-examination. Similarly, Janice's attorney elicited no additional information from any other source, nor did the former wife's own testimony provide such facts. As a consequence, the record is completely devoid of any evidence surmounting the presumption that the defense-related fees resulted in a community obligation.[1]
In her reasons for judgment, the trial judge found that Gilbert presented no evidence to show he had been on a community mission at the time of the charged offense or that his acquittal somehow aided the community. That analysis, however, misconceived Allbritton, supra, and placed the burden of proof on the wrong party. Instead, once the husband established that the debt had been incurred during the community regime, he benefited from the Article 2361 presumption without any necessity to present further evidence. It then became incumbent upon Janice to show, under La.C.C. Art. 2363, that her former spouse committed an "intentional wrong" not for the benefit of the community. See Allbritton, supra (such evidence not presented anent attorney's fees incurred after a DWI charge during the marriage). Because appellee glaringly failed in that regard, the trial court erred in classifying the attorney's fees as the husband's separate debt.[2] See Succession of LeBlanc, supra; Allbritton, supra. Cf. Williams v. Williams, 95-13 (La. App. 5th Cir. 04/25/95), 655 So.2d 405 (record clearly indicated husband stabbed an individual in retaliation for something done to his brother); Anderson-Dunham, Inc. v. Hamilton, 564 So.2d 823 (La.App. 1st Cir.1990), writ denied, 569 So.2d 963 (La.1990) (evidence clearly disclosed husband embezzled funds to maintain a mistress); Richardson v. Richardson, 540 So.2d 1254 (La.App. 3d Cir. 1989) (evidence established husband's misappropriation of in-law's savings did not occur for a community purpose).
Having classified the attorney's fees as a separate debt, the district court never reached the question of whether appellant adequately proved that he paid the obligation out of his separate assets. Under La.C.C. Art. 2365, the party demanding reimbursement must show that separate funds have *666 been used to satisfy the community obligation. Salsbury v. Salsbury, 27,062 (La. App. 2d Cir. 06/21/95), 658 So.2d 734; Kaplan v. Kaplan, 522 So.2d 1344 (La.App.2d Cir.1988).
In that regard, appellant testified that he received several bank loans to pay his legal fees and to post bail in the criminal proceedings. Canceled checks, from the account previously containing those funds, reflect payment for services rendered by the attorney between March 1987 and April 1988. Finally, another check showed that the former husband satisfied the bank debts shortly after the community terminated, using proceeds from the sale of separate immovable property as evidenced by the deed from that transaction. We thus find Gilbert's reimbursement claim to have been adequately established.
In sum, the trial judge erred in rejecting appellant's claim for one-half of the $45,000 in legal fees incurred as a result of the criminal charge. Accordingly, that portion of the district court judgment will be amended to award the former husband an additional $22,500 in reimbursement.

Classification of Janice's Loans
Appellant next maintains that the trial court incorrectly classified, as community obligations, several loans incurred by his wife during the existence of the legal regime. This contention is without merit.
Janice acquired approximately $28,000 in loans from the First National Bank of Arcadia, as well as from an individual, Linda Amberg. All but one of these debts had been entered into prior to the termination of the community, and the former wife testified she used the funds primarily to pay her living expenses after the couple physically separated. She stated that she had no job during most of the relevant period, and that her husband had taken all of their money and fallen in arrears on his court-ordered alimony pendente lite. She nevertheless acknowledged using some of the borrowed funds to pay for flooring and pest exterminations at her separate property, where the couple had formerly resided, and to hire a private detective in the divorce proceedings.
While admitting one of the loans arose prior to the parties' physical separation, Gilbert maintained that neither he nor the community gained any benefit from the funds. Moreover, he viewed the amounts involved as exceeding mere living expenses, especially after Janice received $13,000 from a retirement account liquidated by her during the year prior to their divorce.[3] Even so, the trial court designated most of the loans as community obligations, while categorizing as separate indebtedness a total of $5,450 used to hire the detective and for home improvements and a note for $2,500 executed on July 8, 1988.
It is well recognized that a trial court has broad discretion in settling and adjudicating issues raised in partition proceedings. Kaplan, supra. Likewise, inasmuch as the classification of debts as community or separate involves factual issues, such a determination will not be disturbed on appeal absent manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); First Security Bank & Trust Co. v. Dooley, 480 So.2d 842 (La.App. 2d Cir.1985). Also, of course, appellant owed a duty of support to his wife during the marriage. See La.C.C. Art. 98, comment (c); cf. Cutting v. Cutting, 625 So.2d 1112 (La.App. 3d Cir.1993), writ denied, 93-2770 (La. 01/07/94), 631 So.2d 453. Thus, in light of the record as well as the presumption afforded these debts under La. C.C. Art. 2361, we find no manifest error in the trial court decision to classify the challenged debts as community. Cf. McConathy v. McConathy, 25,542 (La.App. 2d Cir. 02/23/94), 632 So.2d 1200, writ denied, 94-0750 (La. 05/06/94), 637 So.2d 1052; Credit Service Corp. v. Dickerson, 243 So.2d 827 (La.App. 2d Cir.1971); Cutting, supra; Ledet v. Ledet, 496 So.2d 381 (La.App. 4th Cir. 1986).

*667 Divorce Related Attorney's Fees

In his third assignment of error, appellant challenges a reimbursement award to his former wife for attorney's fees she incurred in the divorce action and which the trial court classified as community under La. C.C. Art. 2362.1. He complains both that the fees are unreasonable and that his former wife's evidence did not relate these to the divorce action.
An obligation for attorney's fees and costs in a divorce action, incurred before the date of the judgment of divorce terminating the community property regime, is a separate obligation. La.C.C. Art. 2362.1. Additionally, a trial court has discretion to decide the amount of reasonable attorney's fees. Salsbury, supra. Of course, such factual determinations regarding both the classification of attorney's fees and their reasonableness will not be disturbed in the absence of manifest error. Arceneaux, supra; Salsbury, supra; First Security Bank & Trust Co., supra.
In the present case, Janice testified that the attorney's fees solely related to her previous lawyer's representation of her in the divorce proceeding.[4] In addition, the parties agreed that a balance in the amount of $3,414.79 remained owing on the debt when the community terminated. Both former spouses further stipulated that the fees totaled $4,700, with Gilbert reserving only the right to dispute the purpose for which these had been incurred and the community nature thereof. Oddly, although identified and verified by Janice during her trial testimony, the actual bill or document never became part of the record.
While the evidence on the issue is sparse, we find no manifest error in the trial court decision to classify the fees as a community obligation. This assignment, then, is without merit.

Interest Payments on Improvements to Janice's Separate Property
Gilbert finally argues that the trial court wrongly awarded him reimbursement for only the principal payments made on a loan incurred by the couple to improve the matrimonial home, an asset belonging to his wife's separate estate. Appellant maintains that he should also receive a credit for one-half the $29,868.99 paid in interest, with community funds, on the original $25,000 debt. We disagree.
This court has not previously addressed whether, under La.C.C. Art. 2366,[5] a spouse is entitled to reimbursement for community funds paid in interest on loans benefiting the other spouse's separate property. The other Louisiana courts of appeal have concluded in similar situations, however, that reimbursement is due for only one-half the principal payments made on the debt. See Loyacono v. Loyacono, 618 So.2d 896 (La.App. 5th Cir.1993); Parker v. Parker, 517 So.2d 264 (La.App. 1st Cir.1987); Longo v. Longo, 474 So.2d 500 (La.App. 4th Cir.1985), writ denied, 477 So.2d 711 (La.1985); Cook v. Cook, 457 So.2d 235 (La.App. 3d Cir.1984); Willis v. Willis, 454 So.2d 429 (La.App. 3d Cir.1984); cf. Hurta v. Hurta, 260 So.2d 324 (La.App. 4th Cir.1972). These decisions reason that, while the principal payments by the community have served to improve or benefit the separate property of one spouse and thus entitle the other spouse to reimbursement, the interest payments are different. See Parker, supra; Willis, supra. It is said that the interest benefits the community as the business cost of maintaining and using the natural and civil fruits of the separate property. Id. Such interest payments thus simply constitute compensation by the community in that regard. Id.
Employing that rationale, we conclude that appellant is not due reimbursement for the interest paid from community funds on the debt incurred to improve the former matrimonial *668 domicile. Hence, the trial court did not err in giving Gilbert credit only with respect to the principal payments.

CONCLUSION
For the foregoing reasons, we reverse that portion of the trial court judgment declaring the criminal defense fees to be the husband's separate debt. Therefore, by amendment, Gilbert Roland Sims is awarded an additional $22,500 in reimbursement for those separate funds utilized by him to satisfy that obligation, and, accordingly, the amount to be paid appellant by Janice Harmon Sims is increased to $26,904.15. In all other respects, the district judge's decree is affirmed. Appeal costs are taxed three-quarters to appellant and one quarter to appellee.
AFFIRMED IN PART; REVERSED IN PART; AMENDED AND RENDERED.
NOTES
[1] Appellant apparently had been accused of the second degree murder of his brother, but that disclosure essentially arises from appellee's brief and her oral argument. Indeed, despite the trial judge's statement in written reasons that Gilbert had been charged with "second degree murder," that fact is not found anywhere in the record.
[2] In the instant case, we find it unnecessary to decide precisely what proof would have been required to rebut the presumption of community. Certainly, at a minimum, some of the facts surrounding the circumstances of the alleged crime must be presented to the court undertaking the classification of the debt. We can also conceive of some instances where more extensive development of the evidence will be required. Furthermore, it is difficult to visualize how an acquittal in any case could automatically trigger the conclusion that a "wrong" not benefiting the community has actually been committed.
[3] The retirement money is a community asset which, in the partition, the trial court divided equally between the parties.
[4] The challenged fees are not those of her present counsel, who represented her only in the partition proceeding.
[5] La.C.C. Art. 2366 in pertinent part states:

If community property has been used for the acquisition, use, improvement, or benefit of the separate property of a spouse, the other spouse is entitled upon termination of the community to one-half of the amount or value that the community property had at the time it was used.