630 So.2d 959 (1994)
Kenneth Lynn JENSEN, Plaintiff-Appellee,
v.
Julie Ann JENSEN, Defendant-Appellant.
No. 93-455.
Court of Appeal of Louisiana, Third Circuit.
January 5, 1994.
Rehearing Denied February 25, 1994.
*960 Dennis R. Sumpter, Sulphur, for Kenneth Lynn Jensen.
Richard Alan Morton, De Ridder, for Julie Ann Jensen.
Before DOUCET, YELVERTON and WOODARD, JJ.
DOUCET, Judge.
This appeal arises from a trial court's judgment in a suit to partition community property.
Kenneth Lynn Jensen (Kenneth) and Julie Ann DeRamus Jensen (Julie) were married on June 8, 1973, and legally separated on November 2, 1988. The community of acquets and gains existing between them was dissolved retroactively to September 27, 1988, the date of filing of the petition for separation. They were divorced on September 7, 1989. Kenneth subsequently filed a petition for partition of the community property alleging he was entitled to be reimbursed for his separate funds expended to construct the family home. Julie answered the petition denying Kenneth's claims and alleging, among other things, she was entitled to be reimbursed for her separate funds used to pay community debts. Neither party listed any liabilities. At trial the parties stipulated that the family home constructed during the marriage was built on Julie's separate property. They further stipulated that certain real estate properties sold on April 12, 1978, and May 11, 1978, were Kenneth's separate property. The trial court found Kenneth established that $34,600 of his separate funds were expended in the construction of the family home or in the repayment of monies borrowed for the construction. The judgment awarded Kenneth $34,600 subject to a $600 credit in favor of Julie for her one-half interest in antique furniture awarded to Kenneth. The judgment further awarded a lien in favor of Kenneth on Julie's separate property.

REIMBURSEMENT
Julie contends the trial court erred in finding Kenneth proved that the funds used to construct the house were separate rather than community funds. She claims the separate funds Kenneth received from the sale of his separate property were deposited into a joint account into which the parties also deposited pay checks and other monies derived from community interests. She avers that because Kenneth's separate funds were commingled with community funds and Kenneth did not enter the bank records of the parties' accounts into the court record, he failed to overcome the presumption that all funds were community in nature at the time they were spent on the construction of the home.
La.C.C. art. 2367.1 provides that upon termination of the community, a spouse whose separate assets were used to make improvements on the separate property of the other spouse is entitled to be reimbursed for the value those assets had at the time they were used. This article was added in 1984. The article does not state what a claimant is required to prove in order to be successful in a claim for restitution. We find no jurisprudential authority interpreting this statute on this issue. However, the jurisprudence is replete with cases involving claims of restitution against the community property regime which enunciate judicially created requirements for reimbursement of separate funds used to benefit the community. These requirements are enunciated in Ziegler v. Ziegler, 537 So.2d 1207, 1212 (La.App. 4 Cir. 1989) as follows:
A claim for reimbursement requires proof that separate funds were available and compelling proof that they were used for the benefit of the community. Succession of Blythe, 496 So.2d 1180 (La.App. 5th Cir.1986), writ denied 498 So.2d 15 (La. 1986). However, proof of benefit to the community need not be with absolute exactness and can be based upon circumstantial evidence in situations where the court is convinced that the community received the benefit. Succession of Videau, 197 So.2d 655 (La.App. 4th Cir.1967), writ denied, 250 La. 920, 199 So.2d 922 (1967).
Absent compelling proof of a strong and substantial economic advantage inuring to the community, claims for restitution will be denied. Succession of Vice, 385 So.2d 554 (La.App. 3 Cir.), writ denied, 392 So.2d 1066 *961 (La.1980). We find these jurisprudential principles dispositive of the issue before us.
Kenneth introduced copies of the two acts of sale of his admitted separate property. Kenneth claimed $23,300 received from the April 12, 1978 sale and $15,000 from the May 11, 1978 sale were expended in the construction of the home or in the repayment of monies loaned to Kenneth and Julie for the construction. Julie testified Kenneth's money was deposited in their joint checking account at Calcasieu Marine National Bank. It is her position that the funds from this account, which included the parties' pay checks and monies received from the sale of cattle, paid for the construction. She urges that because construction of the home took place over a two year period, she and Kenneth were able to build the home without having to finance the construction.
Kenneth testified he deposited his share of the April sale in his name at First National Bank. He claimed that the only other money deposited into this account was a $1,500 deposit received as a cash down payment from the May 1978 credit sale of his separate real estate. He admitted that Julie's name was added to the account but denied that deposit monies from the sale of cows or any other sources other than funds received from the sale of his real property were deposited into this First National account. No bank records or bank statements were submitted by either party to substantiate their claims as to the manner in which the separate funds used to build the home were managed.
Kenneth claimed his funds were exhausted within the first six months of construction. The construction began sometime in 1978 and was completed in May of 1980. The brick structure included three bedrooms and encompassed 2,200 square feet. Kenneth valued the home at $45,000. Julie admitted the home would be valued in excess of $20,000. Most importantly, Julie admitted Kenneth spent approximately $20,000 of his separate funds in the construction of the home.
Both parties testified regarding their earnings and the sale of cattle during the marriage. The parties also testified as to the assets with which the community began.
The parties' testimonies were contradictory as to whether the funds in question were commingled with community funds. Funds are not community by virtue of the fact they are in a joint account. Allbritton v. Allbritton, 561 So.2d 125 (La.App. 3 Cir.), writs denied, 565 So.2d 445 and 565 So.2d 454 (La.1990). The trial court apparently found Kenneth's testimony on this point more believable.
The trial court apparently further found that Kenneth used separate funds to repay sums owed to Mr. and Mrs. Potts and to Mr. Bayne for monies used in construction of the home and ordered that these amounts be reimbursed to him. Kenneth repaid them by assigning a debt owed to him as a result of the sale of his separate real estate and as a result of the sale of his trailer. La.C.C. Art. 2367.1 provides that:
Art. 2367.1. Improvements on separate property
Buildings, other constructions permanently attached to the ground, and plantings made on the land of a spouse with the separate assets of the other spouse belong to the owner of the ground. Upon alienation of the land, or termination of the community, the spouse whose assets were used is entitled to reimbursement for the amount or value that the assets had at the time they were used.
Under this article, the family home built on Julie's land with the separate assets of Kenneth belonged to Julie, but on termination of the community, Kenneth, whose assets were used, was entitled to reimbursement for the amount or value that the assets had at the time they were used.
At trial testimony of all the witnesses, including Julie's, established that $8,000 from the Potts was used for the construction of the home. Mrs. Potts' testimony indicated a collection account had been established at First National Bank in her behalf. She confirmed that the payment book admitted into evidence correctly reflected the amount of interest and principle the Potts had received in repayment of the loan. The payment book showed a total of $5,380 payments had been made through October 21, 1985. Kenneth's *962 uncontroverted testimony established the payments were made from the sale of a trailer he owned prior to the marriage. Kenneth and Mrs. Potts testified other payments were made from the mortgage payments Kenneth received in connection with the sale of his real estate on May 11, 1978.
Further, at trial Mrs. Potts presented checks of Mr. Thomas Bayne which were entered into the record. These checks, totaling $11,348.26, evidenced funds from Mr. Bayne to the Jensens for construction of the home. No other documents were presented. Mrs. Potts testified that in repayment of this loan, Kenneth signed over his interest in the May 1978 real property credit sale. She further indicated Kenneth's interest at that time was $11,000. Julie agreed that the money was used in constructing the home. After reviewing the record in its entirety we cannot say that the trial court erred in finding that Kenneth used his separate funds for the improvement of the community. The trial court correctly ordered reimbursement of these funds.
In sum, the trial judge, in reasons for judgment, stated that on the basis of the totality of the testimony of the witnesses and the documentary evidence submitted at the trial, he was convinced that "these funds [$34,600] were actually expended in the construction of the house or in the payment of notes for sums owed to Mr. and Mrs. Potts and Mr. Thomas Bayne for monies loaned to plaintiff and defendant for the construction of the improvements." The trial judge did not itemize, but it is relatively easy to do so: of Kenneth's separate money, $5,380 was used to pay part of the $8,000 put on the house out of the loan from the Potts. $11,000.00 was used to pay on the $11,348.26 loan on the house from Thomas Bayne. The rest was paid directly on the construction of the house. Julie gets a credit for $600 for a dining room suite Kenneth received but which was community property. Therefore, under the express terms of La.Civ.Code art. 2367.1, he is entitled to be reimbursed for all of it.
The trial court, in its written reasons for judgment, found that the residence could not have been constructed without borrowing money unless the admittedly separate funds were used. The court found Kenneth's testimony regarding the source of the funds much more plausible. The court found Julie's testimony regarding the parties' income simply not convincing.
The trier of fact, who has the unique advantage of hearing and viewing evidence when given, is not to be reversed on an evaluation of credibility which furnishes a basis for the trial court's finding of fact unless that finding is manifestly erroneous. Patin v. Patin, 462 So.2d 1356 (La.App. 3 Cir.1985), writ den., 466 So.2d 470 (La. 1985), citing Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Allbritton v. Allbritton, supra, at 129.
The trial court had direct evidence in Kenneth's testimony that he used his separate funds to construct the home built on Julie's separate property. The circumstantial evidence corroborates his testimony. Testimony regarding the parties' salaries and other income showed it was insufficient to build the house without a conventional mortgage.
For the foregoing reasons, we find the record supports the trial court's determination that Kenneth established $22,100 from the April sale was invested in the construction of the home. The trial court correctly disallowed $1,200 of the $23,300 Kenneth claimed from the April sale which the evidence showed was not spent on the construction. Further, we find the trial court correctly ruled that Kenneth expended $12,500 on the house from his separate property sold on May 11, 1978, in the construction.

COMMUNITY OBLIGATIONS
Julie next contends the trial court erred in failing to award reimbursement to her for community debts which she paid with her separate funds. Julie's pleadings showed she claimed reimbursement against the community for payments made to GMAC and Brown's Lumber Company. Julie's checks and bank statement admitted into the record reflect payments totaling $2,558.34 to GMAC and $330.00 to Brown's Lumber Company. These payments were made after the termination of the community property regime. Julie argues she is entitled to one half of $2,888.34, or $1,444.17.
*963 The record reflects the parties stipulated that the debts were owed. Our review of the record reveals that Julie failed to show that the debts for which she claimed reimbursement were community debts. There is no evidence in the record to show the purpose for which the debts were incurred. Without such evidence we cannot conclude they were community debts.

JUDICIAL LIEN
Julie contends the trial court erred in awarding a lien in favor of Kenneth against the former marital home pursuant to R.S. 9:2801(4)(c). Julie argues that at the time of trial on November 13, 1991, she no longer owned the property. She urges that an instrument filed into the public records on February 7, 1991, reflects she conveyed ownership of this property.
The record does not contain the instrument. Although Julie attached a copy of the instrument to her brief, it does not constitute evidence and cannot be considered on appeal. City of Eunice, 505 So.2d 976 (La. App. 3 Cir.1987). La.R.S. 9:2801 provides in pertinent part:
Partition of community property and settlement of claims arising from matrimonial regimes
When the spouses are unable to agree on a partition of community property or on the settlement of the claims between the spouses arising from the matrimonial regime, either spouse, upon termination of the matrimonial regime, or as an incident of the action which would result in a termination of the matrimonial regime, may institute a proceeding, which shall be conducted in accordance with the following rules:
* * * * * *
(4) The court shall then partition the community in accordance with the following rules:
* * * * * *
(c) The court shall allocate or assign to the respective spouses all of the community assets and liabilities. In allocating assets and liabilities, the court may divide a particular asset or liability equally or unequally or may allocate it in its entirety to one of the spouses. The court shall consider the nature and source of the asset or liability, the economic condition of each spouse, and any other circumstances that the court deems relevant. As between the spouses, the allocation of a liability to a spouse obligates that spouse to extinguish that liability. The allocation in no way affects the rights of creditors.
In the event that the allocation of assets and liabilities results in an unequal net distribution, the court shall order the payment of an equalizing sum of money, either cash or deferred, secured or unsecured, upon such terms and conditions as the court shall direct. The court may order the execution of notes, mortgages, or other documents as it deems necessary, or may impose a mortgage or lien on either community or separate property, movable or immovable, as security. (emphasis added)
This statute provides that a judicial mortgage may be imposed on specific property in order to secure a judgment award. Thus, it was within the trial court's discretion to impose such a lien for the $34,000 of Kenneth's separate funds used in constructing the family home minus a $600 credit for Julie's interest in the dining room furniture.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.