772 So.2d 141 (2000)
Susan MUNSON
v.
Lawrence MUNSON.
No. 00-348.
Court of Appeal of Louisiana, Third Circuit.
October 4, 2000.
*142 Mr. Scott R. McClain, Lake Charles, Louisiana, Counsel for Plaintiff/Appellee.
Mr. Mark Plaisance, Baker, Louisiana, Counsel for Defendant/Appellant.
(Court composed of Judge BILLIE COLOMBARO WOODARD, Judge OSWALD A. DECUIR, and JIMMIE C. PETERS).
WOODARD, Judge.
In this community property partition litigation, Mr. Lawrence Munson appeals a trial court's decision, awarding Ms. Susan Munson full ownership of their former family home on Thirteenth Street in Lake Charles, Louisiana (the 13th Street home), a Dodge mini-van, a boat and trailer, the Whitney National Bank account's balance, along with a $25,637.53 judgment.
Mr. Munson claims that the trial court should have awarded him retroactive rental payments for Ms. Munson's use of the 13th Street home as her residence. He also contends that she should have been liable for one-half of the penalty which he incurred for prematurely liquidating his retirement fund and asserts that the trial court erred when it found hospital expenses, which Ms. Munson incurred on her children's behalf, to belong to the community. Finding that Mr. Munson's contentions belie direct, relevant jurisprudence, we affirm.
Mr. Munson also alleges that the trial court erred when it did not find Ms. Munson to be liable for failure to preserve the 13th Street home and for a 1994 tax deficiency. Additionally, he insists that the trial court's characterization of her 1991 and 1992 student loans, as a community obligation, is erroneous. We thoroughly reviewed the record and found no manifest error; consequently, we affirm.
Furthermore, Mr. Munson maintains that the trial court erred when it awarded Ms. Munson one-half of the total amount which the community remitted on a separate property mortgage. We find inapposite the well-established jurisprudential exception that community may only be reimbursed for that part of the payment accruing to the mortgage's principal but not to interests. We find such an exception applicable when the mortgaged separate property benefitted the community. Finding no error in the trial court's decision that Mr. Munson's separate property did not benefit the community, we affirm.
*143 Finally, Mr. Munson disputes the trial court's decision to make a Commercial Credit loan (the CC loan) his separate obligation. Although a presumption of community attaches to obligations incurred during its existence, it may be rebutted upon showing that it did not, in fact, benefit the community. We affirm.

* * * * *
Ms. and Mr. Munson, both had children from prior unions when they married on February 24, 1984. They did not have any children together. Apparently, they separated in August of 1993, and on June 27, 1994, Ms. Munson petitioned for divorce. On July 27, 1994, upon the Munsons' stipulation, the trial court signed a judgment, awarding the use and occupancy of their 13th Street family home to Ms. Munson. They also agreed that their community property was to be deemed terminated. The trial court entered a divorce judgment on August 25, 1994.
On February 29, 1996, Mr. Munson filed a petition to partition their former community property. In a judgment entered on December 3, 1999, the trial court awarded the 13th Street home's full ownership to Ms. Munson, as well as a Dodge mini-van, a boat and trailer, the Whitney National Bank account's balance, along with $25,637.53. Mr. Munson appeals.

PRESERVATION OF COMMUNITY PROPERTY ASSETS
Mr. Munson claims that the trial court erred when finding that he did not present sufficient evidence to support his claim that Ms. Munson failed to care for the 13th Street home.
It is well settled that an appellate court may not set aside a trial court's fact finding absent a manifest error, or unless it is clearly wrong.[1] In the case sub judice, a real estate evaluation performed by Mr. Michael D. Vanek, a real estate broker, on August 29, 1996, explained that the 13th Street home would be difficult to market, because of roof leaks and its overall need for renovations. He appraised its fair market value at $46,000.00 and approximated the cost of renovation at $10,000.00. He estimated its post-renovation fair market value in the $56,000.00-$59,000.00 range.
Mr. Munson's only evidence supporting his contention that Ms. Munson should bear sole responsibility for the 13th Street home depreciation, was his own testimony of his personal inspection. He said that he found clothes all over the various rooms and damaged doors and walls. However, he did not introduce any evidence pertaining to the roof condition.
Ms. Munson testified that "[e]verything in [13th Street home], the rooms were leaking from the roof. He wouldn't even pay to-help me pay to get a new roof on the house. I had to do that myself." The trial court found that the scant evidence, which Mr. Munson introduced, was insufficient to make Ms. Munson solely liable for the home's disrepair. The court noted: "It is unclear whether the parties' failure to maintain during the marriage may have contributed to the current state of disrepair." After having thoroughly reviewed the record, we find no manifest error in the trial court's decision. Accordingly, we affirm.

RENT AWARD
Mr. Munson contends that the trial court erred when it failed to assess retroactive rental payments for Ms. Munson's use of the 13th Street home after they separated. The trial court found that McCarroll v. McCarroll[2] was controlling. Notwithstanding, Mr. Munson asserts that McCarroll does not apply because in that case, the occupying spouse used the home as a family shelter and that since Ms. Munson occupied the house with children *144 from another marriage, she should not be entitled to the McCarroll protection.
The Louisiana Supreme Court in McCarroll[3] stated that "rental payments may not be retroactively assessed under La.R.S. 9:374(C) unless otherwise agreed to by the spouses or ordered by the court."[4] Relying on La.Civ.Code art. 802, which designates rules of co-ownership, it stated that "a co-owner need not pay rent to another co-owner for his exclusive use of the co-owned property"[5] and specified that a co-owner in exclusive possession may be liable for rent, only upon the other co-owner's demand and denial of occupancy. It noted that public policy heavily weighs against retroactive rental payment awards, because, it explained, such award prejudices the occupying spouse by depriving her of any budgeting ability. It concluded that rental payments could not be retroactively assessed unless agreed to by the spouses or upon a court order contemporaneous with the occupancy award.
After carefully reviewing McCarroll, we do not understand its scope of protection to be conditioned upon whether the awarded family home also served as a shelter for children born from the marriage. Accordingly, we find no reason to depart from its holding and affirm the trial court's decision.

RETIREMENT FUND
Mr. Munson owned a retirement fund with a $14,905.80 balance, which he unilaterally decided to prematurely liquidate, thus incurring a $2,981.16 tax penalty, (netting $11,924.64), after termination of the community property. The trial court awarded Ms. Munson one-half of the pre-penalty amount, finding its decision to be bound by La.Civ.Code art. 2369.3 and Gibson v. Gibson.[6] Mr. Munson appeals the trial court's decision on the ground that the record did not contain any evidence, suggesting that he failed to preserve the community asset.
Mr. Munson's argument on this issue totally disregards our Gibson decision. In Gibson,[7] we found that the following facts were sufficient to trigger a finding that a spouse failed to preserve community property assets, to-wit:
In the case sub judice, Delbert simply withdrew all the funds in the retirement account without advising Karen of his intentions. As a result, she suffered a 20% loss of the corpus of the account.... At the very least, she could have decided how and when to withdraw the funds that belonged to her. Therefore, Delbert failed to preserve the former community property "in a manner consistent with the mode of use of that property immediately prior to termination of the community regime." La. Civ.Code art. 2369.3. Surely, it seems that if one purpose of the accounts in question is to avoid tax liability, any act that incurs such liability would be imprudent. Furthermore, bad faith is not required under Article 2369.3 because the spouse is "answerable for any damage caused by his fault, default, or neglect." Id.

Again, finding no reason to depart from such a compelling precedent, we affirm.

MS. MUNSON'S STUDENT LOANS
While a student, Ms. Munson obtained the following three student loans: $4,000.00 on December 8, 1991, $2,000.00 on December 20, 1992, and $4,000.00 on March 10, 1994. The trial court found the 1991 and 1992 loans to be community obligations, although it found the 1994 loan to be Ms. Munson's separate obligation. Mr. *145 Munson appeals the trial court's 1991 and 1992 loan characterization, arguing that Ms. Munson did not show that it benefitted the community property.
At the outset, La.Civ.Code art. 2360 states that "[a]n obligation incurred by a spouse during the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation." Further, in McConathy v. McConathy,[8] the first circuit stated that "[t]o determine whether these funds benefited [sic] the community, or were used for the `common interest of the spouses,' it is necessary to examine the uses to which they were put." Finally, in Keene v. Reggie,[9] we stated that the community property presumption may be rebutted by clear and convincing evidence.
Upon categorizing the student loans as community property, the McConathy court considered the spouses' anticipation that the pursuit of the student-spouse's education would eventually, and ultimately, benefit the community. Similarly, in the instant case, the trial court found that the Munsons anticipated that the 1991 and 1992 student loans would ultimately improve Ms. Munson's earning power for the community's benefit. After thoroughly reviewing the record, we find no error in the trial court's decision. Thus, we affirm.

MS. MUNSON'S CHILDREN'S HOSPITAL BILLS
While married to Mr. Munson, Ms. Munson apparently incurred hospital expenses for her children born from her prior marriage. The trial court characterized such hospital expenses as a community obligation. Mr. Munson appeals. We affirm.
La.Civ.Code art. 227 provides that "[f]athers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children." Additionally, La.Civ. Code art. 2362 provides that "[a]n alimentary obligation imposed by law on a spouse is deemed to be a community obligation." In Cutting v. Cutting,[10] we stated that "[w]hen a parent ... fulfills her alimentary obligation, it is a community obligation and the non-parent spouse may not demand repayment." Again, Mr. Munson's argument directly contradicts our precedents. Consequently, we affirm the trial court's decision.

MR. MUNSON'S SEPARATE MORTGAGE PAYMENTS
During their marriage, the community paid a total of $57,820.00 on Mr. Munson's separate property mortgage payments. Ms. Munson sought, and the trial court awarded her, one-half of the payment, namely, $28,910.00. Mr. Munson appeals, arguing that the trial court's decision amounts to a legal error.
Relying on Major v. Major[11] and Longo v. Longo,[12] Mr. Munson insists that the trial court erred when including in its award, the community assets repaying the mortgage interest.
La.Civ.Code art. 2364 provides that "[i]f community property has been used to satisfy a separate obligation of a spouse, the other spouse is entitled to reimbursement upon termination of the community property regime for one-half of the amount or value that the property had at the time it was used" (emphases added). Article 2364 clearly and unambiguously provides for the actual value of the used community *146 property to serve as a restitution measure.
The Longo-Major courts, along with others,[13] departed from Article 2364's and its predecessors' precepts, in the specific situation where the community property receives benefits from the separate property upon which the mortgage attaches. The Major-Longo jurisprudence read Article 2364 in pari materia with La.Civ. Code art. 2339, which provides, in relevant part, that "[t]he natural and civil fruits of the separate property of a spouse ... are community property." The Major-Longo courts found an interest payment to be no more than the cost of maintaining such natural and civil fruits which arise out of a spouse's separate property but ultimately accrue to the community's use or benefit.[14]
In the case sub judice, our thorough review of the record reveals that Mr. Munson's separate property at issue did not benefit the community in the way described in the Major-Longo jurisprudence. His property neither generated any rent, to which the community property would be entitled, nor was it used as the Munson's family home. Ms. Munson testified that she did not possess a key to the property and that she never went to it after the first year of their marriage. Accordingly, we find the Major-Longo jurisprudence to be inapposite to the case sub judice and affirm the trial court's decision.

INCOME TAX
The Munsons filed and obtained a divorce judgment in 1994. That year, the trial court found that they also filed separate tax returns. Subsequently, the Internal Revenue Service assessed Mr. Munson with a $1,945.66 deficiency which he paid with separate funds. Mr. Munson claims that the trial court erred in denying his request for reimbursement of one-half the tax deficiency amount. He argues, in essence, that a community property presumption attached to the tax deficiency and a stipulation, which the parties entered regarding the amount of the paid deficiency, conclusively established its community property nature.
Mr. Munson does not dispute the fact that the parties filed separate tax returns for the 1994 tax period. Further, the stipulation to which he refers merely provides that he "paid the sum of $1,945.66 for income taxes [sic] for the calender year 1994; however, SUSAN MUNSON, reserves the right to contest the right of LAWRENCE MUNSON to a credit or reimbursement of that amount...." When reaching its decision, the trial court simply found that "[w]ithout more evidence regarding the reasons for the assessment, Mr. Munson has presented insufficient evidence to prove that the deficiency was a community obligation." In other words, Mr. Munson failed to prove that the community property, not him separately, incurred the tax deficiency. We agree with the trial court and affirm its decision on this issue.

COMMERCIAL CREDIT INDEBTEDNESS
During the existence of the community, Mr. Munson incurred a loan with Commercial Credit for $15,014.64. Subsequent to the community property termination, he repaid $12,272.19 on the CC loan for which he claims reimbursement for one-half. Finding no evidence that the loan benefitted the community, the trial court denied his claim. Mr. Munson claims that we should reverse on this issue because Ms. Munson failed to rebut, by clear and convincing evidence, the presumption that the CC loan benefitted the community.
La.Civ.Code art. 2360 provides that "[a]n obligation incurred by a spouse during *147 the existence of a community property regime for the common interest of the spouses or for the interest of the other spouse is a community obligation." Additionally, La.Civ.Code art. 2361 sets forth that, "[e]xcept as provided in Article 2363, all obligations incurred by a spouse during the existence of a community property regime are presumed to be community obligations." Finally, La.Civ.Code art. 2363 specifies that:
A separate obligation of a spouse is one incurred by that spouse prior to the establishment of a community property regime, or one incurred during the existence of a community property regime though not for the common interest of the spouses or for the interest of the other spouse.
(Emphasis added.) Analyzing Article 2363, in Keene v. Reggie,[15] we explained that the presumption in Article 2362 may be rebutted upon showing, by clear and convincing evidence, that the spouse did not incur the debt for the community property's benefit.[16] Hence, courts must examine the uses made of the borrowed property.[17]
In the case sub judice, during trial, Mr. Munson testified that he did not use the CC loan proceeds for his separate benefit, but for debts which Ms. Munson incurred on her children's behalf or for their benefit. Nevertheless, it is undisputed that the loan proceeds were placed in a Baton Rouge Bank and Trust Company's (BRB) account bearing Mr. Munson's name only. Whitney National Bank (Whitney) later purchased BRB. Ms. Munson testified that she did not know how Mr. Munson utilized the CC loan proceeds and that "she never saw the check," but asserts that Mr. Munson did not use it to pay any of her outstanding bills or charge accounts.
To rebut the presumption that the loan benefitted the community, Ms. Munson's counsel served Mr. Munson with a subpoena duces tecum, requesting that he produce the BRB-Whitney account records at the partition hearing. Mr. Munson did not comply. During the hearing, he claimed that he misunderstood the subpoena's content; thinking that it concerned some credit card records. He acknowledged possessing the subpoenaed BRB-Whitney documents, and the trial court ordered that he present such documents within seven days of the hearing.
We thoroughly reviewed the appellate record and did not find the BRB-Whitney account information, nor did we find any explanation provided for such absence. In its reasons for judgment, the trial court stated that "without evidence that the loan benefitted the community, Mr. Munson is not entitled to reimbursement." When it reached such conclusion, the trial court relied on Jensen v. Jensen.[18] The trial court committed a legal error in its decision as we find the Jensen decision inapposite to the circumstances sub judice. However, reviewing the record de novo, we find that Mr. Munson's failure to provide the subpoenaed bank records justifies applying upon him an adverse inference and presumption that the records would have been unfavorable to his position, namely, showing that the loan proceeds did not benefit the community property. Accordingly, albeit for different reasons, we affirm the trial court's decision on this issue.

CONCLUSION
For the aforementioned reasons, we affirm the trial court's decision and cast all costs against Mr. Munson.
AFFIRMED.
NOTES
[1] Jim Walter Homes, Inc. v. Jessen, 98-1685 (La.App. 3 Cir. 3/31/99) 732 So.2d 699, 702; Syrie v. Schilhab, 96-1027 (La.5/20/97); 693 So.2d 1173, 1176.
[2] 96-2700 (La.10/21/97); 701 So.2d 1280.
[3] Id.
[4] Id at 1289.
[5] Id. (citing Juneau v. Laborde, 228 La. 410, 82 So.2d 693 (1955)).
[6] 96-1472 (La.App. 3 Cir. 4/2/97); 692 So.2d 708.
[7] Id. at 710 (emphasis in bold added) (emphasis in italics supplied).
[8] 25,542 (La.App. 2 Cir. 2/23/94); 632 So.2d 1200, 1206 (citing Webb v. Pioneer Bank & Trust Co., 530 So.2d 115 (La.App. 2d Cir. 1988), and Ledet v. Ledet, 496 So.2d 381 (La. App. 4 Cir.1986)).
[9] 96-740 (La.App. 3 Cir. 10/22/97); 701 So.2d 720.
[10] 92-1358 (La.App. 3 Cir.1993); 625 So.2d 1112, 1117 (citing Connell v. Connell, 331 So.2d 4 (La.1976), criticized on other grounds by White v. Broussard, 98-428 (La.App. 3 Cir. 10/7/98); 720 So.2d 392).
[11] 94-1886 (La.App. 4 Cir. 4/3/96); 671 So.2d 571.
[12] 474 So.2d 500 (La.App. 4 Cir.1985).
[13] Succession of Ratcliff, 209 La. 224, 24 So.2d 456 (1945); Willis v. Willis, 454 So.2d 429 (La.App. 3 Cir.1984); Cook v. Cook, 457 So.2d 235 (La.App. 3 Cir.1984); Panzico v. Panzico, 30-760 (La.App. 2 Cir. 8/19/98); 716 So.2d 505; Hurta v. Hurta, 260 So.2d 324 (La.App. 4 Cir.1972).
[14] Parker v. Parker, 517 So.2d 264 (La.App. 1 Cir.1987).
[15] 96-740 (La.App. 3 Cir. 10/22/97); 701 So.2d 720.
[16] Id.; Sims v. Sims, 28,470 (La.App. 2 Cir. 6/26/96); 677 So.2d 663.
[17] Keene, 701 So.2d 720; Sims, 677 So.2d 663.
[18] 93-455 (La.App. 3 Cir. 1/5/94); 630 So.2d 959.